[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 402.]

THE STATE OF OHIO, APPELLEE, *v*. O'NEAL, APPELLANT.

[Cite as *State v. O'Neal*, 2000-Ohio-449.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 98-147—Submitted May 4, 1999—Decided January 5, 2000.)

APPEAL from the Court of Appeals for Hamilton County, No. C-960392.

_____

{¶ 1} On November 14, 1992, appellant, James Derrick O'Neal, and Carol O'Neal were married. Initially, they lived together in Corryville, Ohio, with Carol's four children. In September 1993, Carol, individually, entered into a lease agreement for a home at 4938 Plainville Road in Madisonville. Subsequently, Carol, appellant, and Carol's four minor children moved into the home. Thereafter, two of appellant's minor children also moved into the home.

{¶ 2} By December 1993, the marital relationship between appellant and Carol had deteriorated due, in part, to discord among the children and problems between appellant and Carol's oldest son, Ricardo. During this time, Carol worked at Ampco Parking during the day and at a convenience store at night. Patricia Carr, a friend of Carol's and a coworker at Ampco, stated that Carol acted tired and stressed and that she wanted to end her marriage with appellant.

{¶ 3} On December 7, 1993, an altercation occurred between Carol and appellant. As a result, Officer Michael Mercer from the Cincinnati Police Department responded to a call for assistance at the Plainville Road residence. Mercer found Carol to be "very upset" and "very fearful" of appellant. Carol told Mercer that she had argued with appellant over food stamps and that she had asked him to leave. Carol also informed Mercer that appellant had struck her in the face numerous times, choked her, shoved her to the ground, and kicked her. Mercer

noticed that Carol's face and neck were bruised. Carol also advised Mercer that appellant had recently moved out of the house.

{¶ 4} That same day, December 7, 1993, Carol filed, in the Hamilton County Municipal Court, a domestic violence complaint and a temporary protection order against appellant.[1] A warrant was then issued for appellant's arrest.

{¶ 5} Carr testified that she saw Carol at Ampco Parking on December 7 and noticed that her jaw was swollen and that Carol was "very upset." Carol told Carr that when appellant tried to take food stamps out of her purse, they argued and appellant hit her in the jaw. According to Carr, Carol planned to change the locks on the house and was "scared [appellant] would kill her." Carr also stated that every day thereafter Carol was nervous, shaky, and drained, and explained that whenever the telephone rang at work, "[Carol] would be shaking, scared, thinking it was going to be [appellant] on the phone."

{¶ 6} On December 11, 1993, appellant telephoned Carol at her place of employment. Jamie Wright, who worked with Carol and also knew appellant, answered the telephone and advised Carol that she suspected the caller was appellant. The telephone was then placed in speaker mode so that both Carol and Wright could hear the conversation. Wright testified that after Carol said hello, appellant stated, "Bitch, it ain't over yet." Appellant then started laughing and hung up. According to Wright, Carol stumbled backward, appeared to nearly faint, and was shaking and "nervous and jittery" the rest of the work day.

{¶ 7} Later that evening, appellant broke the glass portion of the front door and entered the residence at 4938 Plainville Road. At the time, Carol was coming down the stairs. When the glass broke, Carol ran upstairs screaming, and she and her three youngest children retreated into a bedroom. Carol directed the children into a closet and she stood pushing on the bedroom door trying to keep appellant

---

1. The temporary protection order was issued on December 12, 1993, the day after Carol was killed.

from entering. Two of Carol's children, who were looking out of the closet, testified that appellant fired a shot at the bedroom door and that Carol fell to the floor behind the bedroom door. Appellant then entered the bedroom and, while standing over Carol, fired two or three shots at her. One of the bullets struck Carol in the upper left chest.

{¶ 8} Appellant left the bedroom and confronted Carol's oldest child, Ricardo, who was then fourteen years old. According to Ricardo, appellant pointed the gun at his neck and pulled the trigger at least twice. When the gun did not fire, appellant hit him in the face with the gun and left the house.

{¶ 9} Timothy Schopmeyer, who was delivering a pizza at a neighbor's home on the day of the murder, testified that he saw appellant approach the front door at 4938 Plainville Road. Schopmeyer noticed that appellant was wearing a thick jacket with the collar pulled up and a hat that was pulled down over a large portion of his head. Moments later, Schopmeyer heard breaking glass and realized that appellant had entered the neighboring house. Schopmeyer testified that within seconds after appellant had entered the home, he (Schopmeyer) heard a woman screaming "No, no, no." The cries of "no" were then followed by several gunshots. Schopmeyer saw appellant leave the house and walk quickly up the street. Schopmeyer stated that approximately thirty seconds passed from the time he heard the breaking glass until appellant left the house. After appellant left the home, Schopmeyer approached the house and he heard children shouting that their mother had been shot. Schopmeyer entered the house, went upstairs, and saw Carol lying on a bed. When he asked her who had done this, she answered, faintly, "My husband." Schopmeyer then ran to get help.

{¶ 10} Police officers responding to the 911 calls noticed that the glass to the front door had been shattered. The police went upstairs and found Carol lying on a bed suffering from a chest wound. They also noticed that Ricardo had a severe "gash" on his face.

**{¶ 11}** Later that day, during surgery, Carol died. The forensic pathologist concluded that a bullet had lacerated one of Carol's lungs and a major vein to her heart, and that she died as a result of blood loss.

**{¶ 12}** Later that night, on December 11, 1993, a police canine unit discovered appellant hiding inside a house that he had broken into near the Plainville Road residence. Appellant surrendered and, in the process, he slid a .25 caliber Raven semiautomatic pistol across the floor to the police. Officer Kevin York took possession of the pistol and later testified that the gun appeared to be jammed.

**{¶ 13}** After being advised of his *Miranda* rights, appellant told Detective Charles Beaver that he and Carol had argued about the children on December 7 and that he had hit her. During the questioning, appellant acknowledged that he was aware that Carol had filed a complaint against him following the December 7 altercation. Appellant also indicated that, on December 11, he had not been living at the Plainville Road home. Appellant stated that prior to that date he had "moved out" when Carol demanded that he and his sons leave the home and that since that time he had been living on the streets. Appellant also stated that he did not know where his sons were living. Appellant told police that he had entered the residence by kicking the front door glass and that he had chased Carol up the stairs. Appellant further confessed that he forced his way into the bedroom and as Carol lay "huddled" on the floor behind the bedroom door "crying and screaming" he shot her "two or three times." Appellant also stated that he "wanted to teach her a lesson," and that he did not care if she died.

**{¶ 14}** During appellant's confession, Beaver did not tell appellant that Carol had died and appellant never asked about her condition. At the end of the police interview, Beaver told appellant that Carol had died during surgery. Beaver testified that appellant "showed exactly no emotion one way or the other as to whether he cared." When asked whether he would do anything differently

4

considering that Carol died as a result of the shooting, appellant stated, "I have no regrets what I did. It hurt what she did to my kids."

{¶ 15} William Schrand, a forensic firearms expert, testified that the bullet found in Carol's body came from the Raven semiautomatic pistol recovered from appellant. This same pistol was linked to a spent bullet and three cartridge shells that police recovered from the bedroom.

{¶ 16} In December 1993, appellant was indicted by the Hamilton County Grand Jury for the aggravated murder of Carol. Count 1 of the indictment charged appellant with purposely causing the death of Carol during the commission of an aggravated burglary (R.C. 2903.01[A]). Count 1 also carried two death penalty specifications: one alleged a course of conduct involving the purposeful attempt to kill two or more persons (R.C. 2929.04[A][5]); and a second alleged murder during an aggravated burglary (R.C. 2929.04[A][7]). Count 2 of the indictment charged appellant with purposely causing the death of Carol with prior calculation and design (R.C. 2903.01[B]). Count 2 also carried the same two death penalty specifications as count 1. Appellant was also indicted on one count of attempted murder of Ricardo (count 3) and one count of aggravated burglary (count 4). Each count in the indictment also carried a firearm specification.

{¶ 17} Appellant filed a pretrial motion pursuant to Crim.R. 12(B) to dismiss all charges and specifications relating to aggravated burglary. In his motion, appellant claimed that he could not be guilty of an aggravated burglary offense because trespass is an essential element of the offense and, in the absence of a court-imposed protection order, one spouse cannot technically trespass upon the residence of the other spouse. The trial court agreed and dismissed count 1 of the indictment (purposely causing the death of Carol during the commission of an aggravated burglary) and its specifications. The court also dismissed the aggravated burglary death penalty specification with respect to count 2, and the court further dismissed count 4. Thus, the course-of-conduct death penalty

specification regarding count 2 remained. Thereafter, the state, pursuant to R.C. 2945.67,[2] appealed the holding of the trial court to the court of appeals.

{¶ 18} Upon appeal, the court of appeals reversed the judgment of the trial court and remanded the cause, holding that "the issue of whether the state can prove that the defendant trespassed on the premises is to be determined at trial, not by a motion to dismiss. If, at the end of the state's case, the evidence is insufficient to prove that the defendant committed a trespass, then the court must dismiss the aggravated burglary charges and specifications pursuant to a Crim.R. 29 motion for acquittal." *State v. O'Neal* (1995), 103 Ohio App.3d 151, 154, 658 N.E.2d 1102, 1103. The court further noted that "in the absence of a restraining order or an order granting one party exclusive possession of the marital residence, the question of whether one spouse has the sole possessory interest in the house depends on whether the evidence shows that *both* parties had made the decision to live in separate places. Both parties must have understood that the possessory interest of one was being relinquished, even if it was relinquished begrudgingly or reluctantly. In the absence of such a showing, there can be no finding of trespass and, hence, no aggravated burglary." (Emphasis *sic*.) *Id.* at 155, 658 N.E.2d at 1104.

{¶ 19} On remand to the trial court, the jury found appellant guilty of both counts of aggravated murder (counts 1 and 2), both aggravated burglary death penalty specifications, three of the firearm specifications, and the aggravated burglary charge (count 4). The jury found appellant not guilty of attempted murder (count 3) and the course-of-conduct death penalty specifications.

{¶ 20} Following a penalty hearing, the jury recommended that appellant be sentenced to death on both aggravated murder counts. The trial court conducted an independent review of the evidence pursuant to R.C. 2929.03(F) and accepted

---

2. R.C. 2945.67(A) provides that "[a] prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which * * * grants a motion to dismiss all or any part of an indictment."

the jury's recommendation and imposed the sentence of death. For the aggravated burglary charge (count 4) and firearm specifications, appellant was sentenced in accordance with the law. On appeal, the court of appeals affirmed.

{¶ 21} The cause is now before this court upon an appeal as of right.

————————————

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, for appellee.

*Elizabeth E. Agar* and *Roxann H. Dieffenbach,* for appellant.

————————————

**DOUGLAS, J.**

{¶ 22} Appellant presents seventeen propositions of law for our consideration. (See Appendix, *infra*.) We have considered each of appellant's propositions of law and have reviewed the death penalty for appropriateness and proportionality. For the reasons that follow, we uphold appellant's convictions and sentences, including the sentence of death.

I

{¶ 23} We have held time and again that this court is not required to address, in detail, each and every contention raised by the parties in a death penalty appeal. We continue to adhere to that position today. We have carefully considered all of the propositions of law and allegations of error and have thoroughly reviewed the record in its entirety. Many of the issues raised by appellant have been addressed and rejected by this court under analogous circumstances in a number of our prior cases. Therefore, these issues require little, if any, discussion. Upon a careful review of the record and the governing law, we fail to detect any errors requiring reversal of appellant's convictions and death sentence. We have found nothing in the record or in the arguments advanced by appellant that would, in any way, undermine our confidence in the outcome of appellant's trial. Accordingly, we address and discuss, in detail, only those issues that merit detailed analysis.

II

Propositions of Law Nos. I, II and XII

{¶ 24} In his first proposition, appellant challenges the conclusions reached by the court of appeals in *State v. O'Neal* (1995), 103 Ohio App.3d 151, 658 N.E.2d 1102 ("*O'Neal I*"), that he could be found to have trespassed on the premises in question and that therefore he could have committed an aggravated burglary. In support of this proposition, appellant contends that the holding in *O'Neal I* is in direct conflict with R.C. 3103.04,[3] which, according to appellant, provided him with a privilege, absent a court order, to enter the residence leased by his spouse at 4938 Plainville Road.

{¶ 25} We disagree. Recently, in *State v. Lilly* (1999), 87 Ohio St.3d 97, 717 N.E.2d 322, paragraph two of the syllabus, we held that R.C. 3103.04 is inapplicable in criminal cases. In *Lilly*, this court reviewed the historical implications of R.C. 3103.04 and concluded that the statute "was intended to address property ownership rights of married persons, matters of a civil nature. Privileges of a husband and wife with respect to the property of the other were not meant to be enforced criminally and do not affect criminal liabilities." *Id*. at 102, 717 N.E.2d at 326. Thus, we find appellant's contention regarding the applicability of R.C. 3103.04 not well taken.

{¶ 26} Appellant also argues that the holding in *O'Neal I* is contrary to law and that it is an "unnecessary act of judicial legislation" redefining criminal trespass. Again, we disagree.

{¶ 27} In the case at bar, the jury convicted appellant of, among other charges, aggravated murder with aggravated burglary death penalty specifications,

---

3. R.C. 3103.04 provides:

"Neither husband nor wife has any interest in the property of the other, except as mentioned in section 3103.03 of the Revised Code, the right to dower, and the right to remain in the mansion house after the death of either. Neither can be excluded from the other's dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction."

and the separate charge of aggravated burglary. R.C. 2911.11 sets forth the crime of aggravated burglary:

"(A) *No person*, by force, stealth, or deception, shall *trespass* in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with the purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

"(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." (Emphasis added.)

**{¶ 28}** As can be gleaned, trespass is an essential element of aggravated burglary. A criminal trespass occurs when a person "without privilege to do so," "[k]nowingly enter[s] or remain[s] on the land or premises of another." R.C. 2911.21(A)(1). "Land or premises" includes "any land, building, structure, or place belonging to, controlled by, or in custody of another." R.C. 2911.21(E).

**{¶ 29}** R.C. 2911.21(A)(1), when read in conjunction with 2911.21(E), establishes that *any* person can indeed commit a trespass against property that belongs to, is controlled by, or is in the custody of, someone else. Therefore, a spouse can be convicted of trespass and aggravated burglary in the dwelling of the other spouse who owns, has custody of, or control over the property where the crime has occurred. *Lilly*, paragraph one of the syllabus ("A spouse may be criminally liable for trespass and/or burglary in the dwelling of the other spouse who is exercising custody or control over that dwelling").

**{¶ 30}** In his second and twelfth propositions, appellant contends that there was insufficient evidence to find that he trespassed on the property in question. Specifically, appellant claims that the record does not support a finding that the

Plainville Road property was in the custody or control of Carol. However, construing the evidence in a light most favorable to the prosecution, which we are required to do, see *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573, and *State v. Fears* (1999), 86 Ohio St.3d 329, 341, 715 N.E.2d 136, 149, we disagree with appellant's contentions.

{¶ 31} There was sufficient evidence submitted at trial for the jury to find that, at the time appellant broke into the residence and murdered Carol, Carol was in sole custody of and control over the home. Carol was the lessee under the lease agreement for the home. Appellant's name was not on the lease. Further, on December 7, 1993, following an altercation with Carol, appellant moved out and began living somewhere else. Carol had also filed a motion for a temporary protection order against appellant. Moreover, appellant admitted to the police that, prior to the day of the murder, he had moved out and no longer lived in the home. On December 11, 1993, appellant shattered the glass in the front door, entered the residence, and killed Carol. Clearly, the evidence was sufficient for the jury to conclude that, at the time of the murder, appellant did not live at 4938 Plainville Road and that the residence was in Carol's sole custody and/or control.

{¶ 32} Accordingly, appellant's second and twelfth propositions of law are not well taken.

III

Proposition of Law No. III

**{¶ 33}** In his third proposition, appellant contends that the prosecution peremptorily excused jurors based on their race. In *Batson v. Kentucky* (1986), 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 82-83, the Supreme Court of the United States held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution precludes purposeful discrimination by the state in the exercise of its peremptory challenges so as to exclude members of minority groups from petit juries. See, also, *State v. Hernandez* (1992), 63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313. If a defendant makes a prima facie case of discrimination, the state must provide a race-neutral explanation. However, the explanation need not rise to the level justifying exercise of a challenge for cause. *Id.* at 582, 589 N.E.2d at 1313, citing *Batson*, 476 U.S. at 96-98, 106 S.Ct. at 1723-1724, 90 L.Ed.2d at 87-89.

**{¶ 34}** Appellant claims that the state's peremptory challenges against prospective jurors Anderson, Breckenridge, and Cowins were racially motivated. However, appellant has failed to show any facts or relevant circumstances that raise an inference that the prosecutor used the challenges for racial reasons. *State v. Hernandez,* 63 Ohio St.3d at 582, 589 N.E.2d at 1313. In fact, in at least one case an African-American replaced a juror challenged by the state, and two African-Americans sat on the jury.

**{¶ 35}** Nonetheless, the trial court requested that the state explain, for the record, the reasons for its challenges. The prosecutor noted that Anderson was dismissed because she was "the lowest rated juror as far as applying the death penalty." The state excused Breckenridge because of his "mixed feelings regarding the death penalty" and because he was single and lived at home with his mother and thereby lacked "a stake in the community."

{¶ 36} The state challenged Cowins because she was a social worker, which the state felt was not a "pro-conviction" occupation, and because she agreed with the verdict finding O.J. Simpson not guilty despite her admission that she had not followed the case. Cowins also stated that she would not openly deliberate with her fellow jurors.

{¶ 37} These explanations are clearly race-neutral and are supported by the record. " 'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Purkett v. Elem* (1995), 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839, quoting *Hernandez v. New York* (1991), 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (plurality opinion). We have held that a trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous. *State v. Hernandez,* 63 Ohio St.3d at 583, 589 N.E.2d at 1313, following *Hernandez v. New York*, 500 U.S. at 369, 111 S.Ct. at 1871, 114 L.Ed.2d at 412. To that end, we conclude that the trial court's acceptance of the state's race-neutral explanations was not clearly erroneous. Cf. *State v. Sheppard* (1998), 84 Ohio St.3d 230, 234-235, 703 N.E.2d 286, 291-292; *State v. Moore* (1998), 81 Ohio St.3d 22, 28, 689 N.E.2d 1, 9; *State v. Dennis* (1997), 79 Ohio St.3d 421, 428, 683 N.E.2d 1096, 1104; *State v. Wilson* (1996), 74 Ohio St.3d 381, 388, 659 N.E.2d 292, 302.

{¶ 38} Therefore, we reject appellant's third proposition of law.

IV

Proposition of Law No. IV

{¶ 39} In his fourth proposition, appellant argues that the admission of multiple hearsay statements attributed to Carol denied him due process of law and the right to confront his accuser. In support, appellant points to testimony of Officer Mercer, Carol's friend Patricia Carr, and Carol's son Ricardo regarding statements that Carol made concerning the December 7 altercation between Carol and appellant, her fears of appellant, and her plans to end the marriage. In allowing the

testimony into evidence, the trial court relied on the "excited utterance" exception to the hearsay rule, Evid.R. 803(2),[4] and the "then existing mental, emotional, or physical condition" exception set forth in Evid.R. 803(3).[5]

{¶ 40} At trial, Officer Mercer testified that after he responded to a call for assistance on December 7, Carol told him that she had just had an altercation with appellant during which he struck her in the face numerous times, choked her, shoved her to the ground, and kicked her because she refused to give him food stamps. Mercer also testified that Carol told him that appellant had moved out and no longer lived at the residence.

{¶ 41} We conclude that Carol's statements to Mercer were relevant to the issues tried and admissible under Evid.R. 803(2) as an excited utterance. All of the above statements related to a startling event or condition, the assault by appellant, which had reportedly just occurred. Mercer testified that Carol was "very excited," "very upset," crying, and "very fearful." In this regard, Carol was still "under the stress of excitement caused by the event or condition." Evid.R. 803(2). See *State v. Huertas* (1990), 51 Ohio St.3d 22, 31, 553 N.E.2d 1058, 1068. See, also, *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234, paragraph one of the syllabus.

{¶ 42} Patricia Carr, Carol's friend and coworker, testified about statements Carol made to her, including details about the December 7 altercation and Carol's relationship with appellant. Carr testified that Carol was "really stressed" in December and wanted to get out of the marriage. Carr testified that after the

---

4. The "excited utterance" exception, Evid.R. 803(2), excludes from the hearsay rule "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

5. The "then existing mental, emotional, or physical condition" exception to the hearsay rule is found at Evid.R. 803(3). It provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" is not excluded by the hearsay rule.

December 7 altercation, whenever the phone rang, Carol was "shaking, scared," thinking it was going to be appellant on the phone. Carr also testified that appellant no longer stayed at the marital home, and that Carol planned to get the locks changed.

{¶ 43} We agree with appellant that the trial court erred by admitting Carr's recitation of Carol's conversations as an excited utterance. The trial court also erred by allowing Carol's son Ricardo to testify about his mother's description of the December 7 altercation to him. For an excited utterance to be admissible, "[t]he central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may *not* be a result of reflective thought." (Emphasis added.) *State v. Taylor* (1993), 66 Ohio St.3d 295, 303, 612 N.E.2d 316, 322. Because Carol's conversations with Ricardo and Carr occurred hours after the altercation, she had considerable time to reflect, thereby negating the "excited utterance" status of the statement. *Id.* at 300-305, 612 N.E.2d at 320-323; *State v. Johnson* (1994), 71 Ohio St.3d 332, 338, 643 N.E.2d 1098, 1104.

{¶ 44} However, we find beyond a reasonable doubt that any improperly admitted hearsay testimony did not contribute to the verdict and therefore was harmless error. *Id.* Ricardo's and Carr's description of the December 7 altercation, as told to them by Carol, duplicated Mercer's admissible testimony. Also, other admissible evidence established that Carol had filed a motion for a protective order and that appellant no longer lived in the home. Moreover, appellant confessed that he had shot Carol.

{¶ 45} Carol's statements that she was feeling stressed and was afraid of appellant were relevant to prove her intent to end the marriage. These statements were properly admitted as evidence under Evid.R. 803(3), which permits hearsay evidence of a declarant's "then existing state of mind, emotion, sensation * * * (such as intent, plan, motive, design, mental feeling [or] pain)." To be sure, "testimony of state-of-mind witnesses, that the victim was fearful and apprehensive

[is] not inadmissible hearsay and [is] properly admitted." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 22, 514 N.E.2d 394, 398. Accord *State v. Frazier* (1995), 73 Ohio St.3d 323, 338, 652 N.E.2d 1000, 1013; *State v. Simko* (1994), 71 Ohio St.3d 483, 491, 644 N.E.2d 345, 353. In addition, statements about Carol's plans to separate and end the marriage were also admissible under Evid.R. 803(3). *State v. Sage* (1987), 31 Ohio St.3d 173, 182-183, 31 OBR 375, 383, 510 N.E.2d 343, 350 (victim's statements regarding intent to break up with defendant admissible).

{¶ 46} Accordingly, appellant's fourth proposition of law is not persuasive.

V

Proposition of Law No. V

{¶ 47} In his fifth proposition, appellant argues that the trial court erred in rejecting his request for an instruction on murder as a lesser included offense to the aggravated murder charged in counts 1 and 2. Murder, which does not require proof of prior calculation and design, R.C. 2903.02, is a lesser included offense of aggravated murder, R.C. 2903.01(A). *State v. Goodwin* (1999), 84 Ohio St.3d 331, 345, 703 N.E.2d 1251, 1264. However, "[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. Accord *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272, 274.

{¶ 48} We conclude that the trial court did not err by refusing to instruct on murder as a lesser included offense to count 2. The state presented strong evidence of prior calculation and design, and a jury could not reasonably find appellant guilty of murder and not guilty of aggravated murder. Appellant attacked Carol four days before the murder. On the day of the murder, he made a threatening telephone call to Carol at her place of work, then several hours later broke into her home armed

with a gun. He was wearing a jacket with the collar pulled up and a cap over a large portion of his head in an apparent attempt to conceal his identity. He chased Carol up the stairs and while standing over her, shot and killed her. The entire incident, breaking into the home, killing Carol, and leaving the home took place in approximately thirty seconds. These facts indicate a calculated plan of attack swiftly carried into execution. Cf. *State v. Goodwin* (1999), 84 Ohio St.3d 331, 344-345, 703 N.E.2d 1251, 1263; *State v. Wilson*, 74 Ohio St.3d at 394-395, 659 N.E.2d at 306. Appellant's claim to police that he did not intend to kill Carol is irrelevant to an instruction on murder as a lesser offense, since murder involves a purposeful killing. See R.C. 2903.02.

{¶ 49} With respect to count 1, we also find that the trial court did not err by refusing to instruct the jury that murder is a lesser included offense to the felony murder charge. The state also presented strong evidence that Carol was in custody and/or control of the home. Prior to killing Carol, appellant was not living at the residence. He broke into the home and mercilessly killed her. The findings of the jury that appellant committed an aggravated burglary were clearly in accord with the evidence produced by the state.

{¶ 50} Therefore, appellant's fifth proposition of law is not well taken.

VI

Proposition of Law No. VI

{¶ 51} In his sixth proposition, appellant contends that his postarrest statement to police should not have been admitted at trial because it was obtained through deception by police officers. Specifically, appellant asserts that the failure of police officers to inform him about Carol's death prevented a knowing and intelligent waiver of his Fifth Amendment rights. We disagree. "A suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and

intelligently waived his Fifth Amendment privilege." *Colorado v. Spring* (1987), 479 U.S. 564, 577, 107 S.Ct. 851, 859, 93 L.Ed.2d 954, 968.

{¶ 52} Further, the police did not lie to appellant about Carol's condition and appellant never asked about her condition while being questioned. The United States Supreme Court "has never held that mere silence by law enforcement officials as to the subject matter of an interrogation is 'trickery' sufficient to invalidate a suspect's waiver of *Miranda* rights." *Id.* at 576, 107 S.Ct. at 858, 93 L.Ed.2d at 967.

{¶ 53} Accordingly, appellant's sixth proposition of law is not persuasive.

VII

Proposition of Law No. VII

{¶ 54} In his seventh proposition, appellant asserts that the prosecutor's closing argument in the penalty phase of the trial appealed to the jury's emotions and improperly referred to the nature and circumstances of the offense as aggravating circumstances. Granted, "[i]t is improper for prosecutors in the penalty phase of a capital trial to make any comment before a jury that the nature and circumstances of the offense are 'aggravating circumstances.' " *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, paragraph two of the syllabus. However, appellant failed to object to these remarks and thus waived all but plain error. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 924-925; Crim.R. 52(B).

{¶ 55} During the penalty phase, the prosecutor questioned whether mitigation "outweigh[s] the cruel manner in which he killed? How does the cruel manner in which he killed, the aggravating circumstances, weigh against the mitigation which you heard[?]" The prosecutor also referred to the "cruel manner in which he killed her" as giving additional weight to the aggravating circumstances.

**{¶ 56}** However, we find that the prosecutor's comments did not amount to plain error. During the penalty phase, both the prosecutor and defense counsel correctly identified the aggravating circumstance. Moreover, the trial court correctly instructed the jury on the weighing process and the relevant aggravating circumstance. In this regard, proper instructions can cure misstatements of law by the parties. See *State v. Loza* (1994), 71 Ohio St.3d 61, 79, 641 N.E.2d 1082, 1102-1104; *State v. Wogenstahl*, 75 Ohio St.3d at 360, 662 N.E.2d at 324-325; *State v. Greer* (1988), 39 Ohio St.3d 236, 251, 530 N.E.2d 382, 400.

**{¶ 57}** Also during his penalty argument, the prosecutor referred to the emotions felt by Carol's children witnessing her murder, and noted that the feelings "were brought from that room into this room. I felt them and so did you." However, in making these statements, it is obvious that the prosecutor was not asking the jury to render verdicts based upon emotion. In any event, "criminal trials cannot be squeezed dry of all feeling." *State v. Keenan* (1993), 66 Ohio St.3d 402, 409, 613 N.E.2d 203, 209.

**{¶ 58}** We find that the alleged errors did not affect the outcome of the trial. The prosecutor's sentencing argument did not contribute unfairly to the death verdict, and it did not create outcome-determinative plain error. Cf. *State v. Landrum* (1990), 53 Ohio St.3d 107, 112, 559 N.E.2d 710, 718; and *State v. Hill* (1996), 75 Ohio St.3d 195, 201-202, 661 N.E.2d 1068, 1077.

**{¶ 59}** Accordingly, we reject appellant's seventh proposition of law.

VIII

Proposition of Law No. VIII

{¶ 60} In his eighth proposition, appellant contends that the trial judge erred in allowing the jury to recommend a sentence on each aggravated murder count because appellant killed only one person. Because appellant did not object to the penalty phase jury instructions at trial, he waived all but plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

{¶ 61} Appellant is correct in that aggravated murder counts involving the same victim are to be merged for sentencing. *State v. Lawson* (1992), 64 Ohio St.3d 336, 351, 595 N.E.2d 902, 913; R.C. 2941.25(A).[6] Here, during the trial court's review of the evidence, the trial court should have merged the two aggravated murder counts and imposed only a single death sentence. See *id.; State v. Huertas*, 51 Ohio St.3d at 28, 553 N.E.2d at 1066.

{¶ 62} However, sentencing an accused on each of two murder counts, involving a single victim, represents a "procedural" error that is "harmless beyond a reasonable doubt." *State v. Moore*, 81 Ohio St.3d at 39, 689 N.E.2d at 17; *State v. Brown* (1988), 38 Ohio St.3d 305, 317-318, 528 N.E.2d 523, 538-539. The fact that the jury considered two aggravated murder counts for a single victim did not unfairly affect the penalty hearing. See *State v. Woodard* (1993), 68 Ohio St.3d 70, 78, 623 N.E.2d 75, 81.

{¶ 63} Therefore, appellant's eighth proposition of law is not well taken.

IX

Proposition of Law No. IX

{¶ 64} The imposition of the death penalty for aggravated murder is precluded unless one of the criteria contained in R.C. 2929.04 is specified in the

---

6. R.C. 2941.25(A) provides:

    "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

indictment or count in the indictment and established beyond a reasonable doubt. R.C. 2929.04(A). At issue in this proposition is R.C. 2929.04(A)(7), which provides that the offense must have been "committed while the offender was committing [or] attempting to commit * * * aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design." We have held that the "principal offender" and the "prior calculation and design" language in R.C. 2929.04(A)(7) are not intended to be cumulative aggravating circumstances but are mutually exclusive alternatives that are not to be charged and proven together in the same cause. *State v. Penix* (1987), 32 Ohio St.3d 369, 371, 513 N.E.2d 744, 746.

{¶ 65} In his ninth proposition of law, appellant asserts that the trial court's instructions to the jury violated our holding in *Penix*. We disagree. Initially, we note that appellant failed to object to this instruction at trial and thus waived all but plain error. *Underwood*. Furthermore, the trial court's instruction to the jury was proper in all respects. At trial, the court instructed the jury that "[t]he single aggravating circumstance which defendant has been convicted of committing is that the offense was committed while the offender was committing, attempting to commit or fleeing immediately after committing or attempting to commit aggravated burglary and either the offender was the principal offender in the commission of the aggravated murder, or if not the principal offender, committed the aggravated murder with prior calculation and design."

{¶ 66} The trial court's instruction to the jury followed the language of R.C. 2929.04(A)(7). We have held that when the "prior calculation and design" and the "principal offender" language of R.C. 2929.04(A)(7) are charged disjunctively to the jury in a single specification, as was done in this case, no error is committed. *State v. Cook* (1992), 65 Ohio St.3d 516, 527, 605 N.E.2d 70, 82-83.

{¶ 67} Accordingly, we reject appellant's ninth proposition of law.

20

X

Proposition of Law No. X

{¶ 68} In his tenth proposition, appellant asserts that the "systematic exclusion of prospective jurors opposed to the death penalty violated [appellant's] right to a fair and impartial jury which reflects the community from which it is drawn." We summarily reject this argument on the authority of *Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137; *State v. Moore*, 81 Ohio St.3d at 26, 689 N.E.2d at 8; *State v. Grant* (1993), 67 Ohio St.3d 465, 476, 620 N.E.2d 50, 64; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph two of the syllabus.

XI

Proposition of Law No. XI

{¶ 69} In his eleventh proposition, appellant contends that the trial court's instruction to the jury during the penalty phase that the jury was to arrive at its findings without sympathy was improper because it effectively restricted the jurors from considering mercy as a mitigating factor. However, the instruction to exclude sympathy "is intended to insure that the sentencing decision is based upon * * * guidelines fixed by statute." *State v. Jenkins,* paragraph three of the syllabus. See, also, *State v. Taylor* (1997), 78 Ohio St.3d 15, 30, 676 N.E.2d 82, 96; *State v. Dunlap* (1995), 73 Ohio St.3d 308, 315, 652 N.E.2d 988, 995-996. Moreover, mercy is not a mitigating factor. *State v. Lorraine* (1993), 66 Ohio St.3d 414, 417, 613 N.E.2d 212, 216.

{¶ 70} Accordingly, we find appellant's eleventh proposition of law not persuasive.

XII

Proposition of Law No. XIII

**{¶ 71}** In his thirteenth proposition, appellant contends that Ohio's capital sentencing scheme is unconstitutional because the same operative fact used to elevate murder to aggravated murder (aggravated burglary in this case) can then be used as a death penalty specification. However, appellant's claim lacks merit. We have previously considered and rejected this argument. *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph one of the syllabus. See, also, *Lowenfield v. Phelps* (1988), 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568.

XIII

Proposition of Law No. XIV

**{¶ 72}** In his fourteenth proposition, appellant challenges Ohio's death penalty statute. However, appellant does not present any arguments that would cause us to revise our position regarding the constitutionality of the statutory scheme. Appellant's contentions are rejected. *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus.

XIV

Proposition of Law No. XV

**{¶ 73}** In his fifteenth proposition, appellant challenges the present structure of Ohio's proportionality review in capital cases. Specifically, appellant argues that his sentence should be compared to cases in which the death penalty was not imposed. We reject this argument on the authority of *Pulley v. Harris* (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29; *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus.

XV

Proposition of Law No. XVI

**{¶ 74}** In his sixteenth proposition, appellant argues that imposing the death penalty in this case is inappropriate and disproportionate when compared to similar

cases. This argument will be considered *infra* during the independent review of the sentence.

## XVI

## Proposition of Law No. XVII

**{¶ 75}** In his seventeenth proposition, appellant asserts that the combined effect of errors in evidentiary rulings and on pretrial motions denied him a fair and impartial trial. However, appellant's argument lacks merit. " '[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.' " *State v. Hill*, 75 Ohio St.3d at 212, 661 N.E.2d at 1083-1084, quoting *United States v. Hasting* (1983), 461 U.S. 499, 508-509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106.

**{¶ 76}** We have reviewed the entire record in this case and we find that appellant received a fair trial, few errors were found, and any error did not prejudice his substantial rights. *State v. Hill*, 75 Ohio St.3d at 212, 661 N.E.2d at 1083-1084. Moreover, "[s]uch errors cannot become prejudicial by sheer weight of numbers." *Id*. at 212, 661 N.E.2d at 1084.

**{¶ 77}** Therefore, we find appellant's seventeenth proposition of law not well taken.

## XVII

**{¶ 78}** Having considered appellant's propositions of law, we must now independently review the death sentence for appropriateness and proportionality (also raised in appellant's sixteenth proposition of law). R.C. 2929.05(A). For purposes of independent review, the two counts of aggravated murder of a single victim must be merged. *State v. Lawson*, 64 Ohio St.3d at 351, 595 N.E.2d at 913.

**{¶ 79}** We find that the aggravating circumstance appellant was found guilty of committing, murder during an aggravated burglary in which appellant was the principal offender (R.C. 2929.04[A][7]), was proven beyond a reasonable

doubt. The nature and circumstances of the offense reveal nothing of any mitigating value.

**{¶ 80}** Testifying on behalf of appellant at the mitigation hearing were Dr. David Chiappone, a clinical psychologist; Dr. Robert Tureen, a clinical psychologist with a specialty in neuropsychology; Dorothy O'Neal, appellant's mother; Steve Dumas, appellant's long-time friend; Cortez O'Neal, appellant's son; and Jamie Powers, appellant's former workplace supervisor. Also, appellant read a statement to the jury.

**{¶ 81}** Dr. Chiappone conducted lengthy interviews with appellant and administered several psychological tests. He also obtained information from appellant's family members and friends. The history he received indicated that appellant had two older and two younger sisters, that he had been the family favorite, that his mother had "doted" over him, and that his parents separated when he was nine years old.

**{¶ 82}** Chiappone noted that appellant completed twelve years of education but was passed academically only because he was a very good basketball player. Appellant had been suspended from school several times for fighting. From 1972 to 1975, appellant served in the United States Marine Corps but was discharged for being absent without leave. From 1976 through approximately 1989, appellant supported himself by selling drugs. During this time, appellant was convicted of selling marijuana. He also served approximately one year in prison for selling cocaine.

**{¶ 83}** After his release from prison, appellant apparently stopped selling drugs and held a number of jobs. Appellant and Carol were married in 1992. Appellant has nine children from different relationships. Appellant attributed his marital problems with Carol to their inability to raise their children together. According to Chiappone, appellant strongly resented Carol because he felt that she had thrown his children out on the street.

**{¶ 84}** Chiappone concluded that appellant had a mixed personality disorder, with narcissistic self-centeredness and antisocial elements, and that he was borderline mentally retarded. Chiappone noted, however, that appellant was not mentally ill and that he understood the difference between right and wrong. Appellant abused alcohol and used cocaine sporadically, and he told Chiappone that he had ingested cocaine on the day that he killed Carol. Chiappone stated that he believed that appellant could adapt to a life in prison.

**{¶ 85}** Chiappone believed that appellant may have suffered brain damage in his childhood and requested that Dr. Tureen, a clinical psychologist with a specialty in clinical neuropsychology, evaluate appellant. Tureen described appellant as suffering from both low intelligence and "minimal cerebral dysfunction," or a basic problem in the "hard wiring" of his brain. His poor academic performance showed evidence of "organicity" or brain damage. Because of this "mild to moderate degree of impairment," his ability to learn is impaired and his thinking tends to be very "concrete." Tureen further stated that he believed that appellant would have more difficulty thinking clearly under the stress of a failed relationship than would the average person. Tureen concluded that appellant killed Carol because appellant felt that it was the only way he could express his anger when Carol made appellant and his sons leave her home.

**{¶ 86}** Other defense witnesses supported these descriptions of appellant's history and background. Appellant's mother, Dorothy O'Neal, stated that appellant was a normal boy when growing up and that he loved basketball. Appellant's father died when appellant was young and this event significantly affected him because appellant and his father had been very close.

**{¶ 87}** Dumas stated that he was a long-time friend of appellant, that appellant was like an older brother to him, and that appellant was not a violent person. Dumas described appellant as a peacemaker. Dumas noted that when appellant got out of prison in 1989, he stopped selling drugs. According to Dumas,

appellant did not want his children to grow up in the streets, stressed education, and urged his children to stay in school.

{¶ 88} Cortez, one of appellant's sons, testified that he loves his father. He also stated that he liked Carol and that she treated him well and was a like mother to him. Cortez stated that on December 7, 1993, he saw his father beat Carol.

{¶ 89} Powers, one of appellant's former employers, stated that appellant had a positive attitude and did a good job even while working in an undesirable, low-paying job. Powers also stated that he had seen appellant act as a peacemaker on different occasions when fights would break out in the kitchen. Powers described appellant as having a really strong work ethic even though he had been fired several times for absenteeism and for being late to work. Powers rehired appellant each time after he had been fired and testified that he would rehire him now if he could.

{¶ 90} In an unsworn statement that he read to the jury, appellant stated that he did not plan or mean to kill Carol, but that his feelings "got the best" of him. He stated that he was sorry for what he had done and for the pain he had caused Carol's family and his own family.

{¶ 91} Upon review of the evidence admitted in mitigation, we find that the evidence concerning appellant's history, character, and background is entitled to very little weight in mitigation. Specifically, we find that appellant's attempt to turn his life around and become a responsible citizen after years of selling drugs and his attempt to be a father to two of his children by taking custody of them and encouraging them to get an education is entitled to some weight in mitigation. Also, his attempt at legitimate, steady employment after his prison term is entitled to some, but very minimal, mitigating weight. See *State v. Mitts* (1998), 81 Ohio St.3d 223, 236, 690 N.E.2d 522, 533; *State v. Fox* (1994), 69 Ohio St.3d 183, 194, 631 N.E.2d 124, 133.

{¶ 92} During the penalty phase, appellant presented no evidence regarding the mitigating factors set forth in R.C. 2929.04(B)(1) through (B)(6), and our review of the record reveals that these factors are inapplicable here. However, there are some "other factors" in the record that appear relevant and are entitled to weight in mitigation. R.C. 2929.04(B)(7).

{¶ 93} Testimony from both psychologists established that appellant has organic brain problems and although appellant is not mentally retarded, he functions in the lower two to three percent of the general population. His judgment, thinking process, and ability to learn from mistakes are all impaired, and he suffers from a mixed personality disorder. These conditions are entitled to some weight in mitigation. See, *e.g.*, *State v. Bies* (1996), 74 Ohio St.3d 320, 327, 658 N.E.2d 754, 761; *State v. Green* (1993), 66 Ohio St.3d 141, 153, 609 N.E.2d 1253, 1263; *State v. Davis* (1992), 63 Ohio St.3d 44, 51, 584 N.E.2d 1192, 1198.

{¶ 94} At the time of the murder, appellant was angry at Carol over what he perceived to be mistreatment of his sons. Appellant expressed regret and remorse, which are entitled to some mitigating weight. See *State v. Mitts*, 81 Ohio St.3d at 236-237, 690 N.E.2d at 533; *State v. Moore*, 81 Ohio St.3d at 44, 689 N.E.2d at 20. Further, appellant's cooperation with police is entitled to some weight in mitigation, *State v. Dunlap*, 73 Ohio St.3d at 319, 652 N.E.2d at 998, as is appellant's ability to adapt to prison, *State v. Smith* (1997), 80 Ohio St.3d 89, 121, 684 N.E.2d 668, 696.

{¶ 95} Pursuant to our statutory duty we have weighed the evidence presented in mitigation against the R.C. 2929.04(A)(7) aggravating circumstance appellant was found guilty of committing. We find that the aggravating circumstance clearly outweighs the mitigating factors beyond a reasonable doubt.

{¶ 96} As a final matter, we have undertaken a comparison of the sentence imposed in this case to those in which we have previously imposed the death penalty. Appellant's death sentence is neither excessive nor disproportionate in

comparison to the penalty imposed in similar cases. See, *e.g.*, *State v. Benge* (1996), 75 Ohio St.3d 136, 661 N.E.2d 1019; *State v. Simko* (1994), 71 Ohio St.3d 483, 644 N.E.2d 345; *State v. Huertas*, 51 Ohio St.3d 22, 553 N.E.2d 1058. In this regard, we also reject appellant's fifteenth proposition of law, *supra*. Appellant attempts to distinguish his crime from the crimes of others on the basis that this was a domestic dispute and the victim was his wife. Such a notion is repugnant to us. We vigorously reject this argument.

{¶ 97} Accordingly, for the foregoing reasons, we affirm the judgment of the court of appeals and uphold the sentence of death.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 98} Every murder is a tragic act; this one is no different. However, not every murderer warrants death. The constitutional purpose of statutory aggravating circumstances is to narrow the class of murderers to those deserving society's ultimate punishment, the death penalty. *Zant v. Stephens* (1983), 462 U.S. 862, 877, 103 S.Ct. 2733, 2743, 77 L.Ed.2d 235, 249-250. See Rosen, Felony Murder and the Eighth Amendment Jurisprudence of Death (1990), 31 B.C.L.Rev. 1103, 1121. At its core, this case is a murder case and it probably should have been prosecuted as a noncapital case.

{¶ 99} Having reviewed and independently weighed all the facts and other evidence disclosed in the record and having considered the offense and the offender as required by R.C. 2929.05(A), I believe that the aggravating circumstance O'Neal was found guilty of committing does not outweigh the mitigating factors beyond a

reasonable doubt. Accordingly, I believe the sentence of death is not appropriate and dissent.

_____

APPENDIX

{¶ 100} "Proposition of Law No. I: A person does not lose all possessory interest in the marital residence, nor the right to legally enter that residence, because he has temporarily left the residence as a result of a marital argument.

{¶ 101} "Proposition of Law No. II: Trespass is an essential element of aggravated burglary, and where defendant enters the marital residence, prior to the issuance of any court order restricting him from doing so, he does not commit a trespass or a burglary.

{¶ 102} "Proposition of Law No. III: The state's use of peremptories to excuse three Afro-American jurors, without articulating inadequate [*sic*] non-discriminatory reason [*sic*] for their dismissal, combined with the acknowledged fact that defendant is a member of a cognizable racial group, violates defendant's right to equal protection under the United States and Ohio Constitutions.

{¶ 103} "Proposition of Law No. IV: Admission of multiple hearsay statements allegedly made by the victim denies defendant the right to confront the witnesses against him, and to due process of law, where the admitted statements do not fall into any recognized hearsay exception.

{¶ 104} "Proposition of Law No. V: When the jury, on the basis of the evidence presented, could reasonably find for the state on all elements of aggravated murder except prior calculation and design, or commission of an underlying felony, the trial court must charge on the lesser included offense of murder if a timely request for such a charge is made.

{¶ 105} "Proposition of Law No. VI: Admission in evidence of statements elicited from defendant while in custody, which are obtained by deception, and are thus not the product of a knowing and intelligent waiver, violates the Fifth and Sixth

Amendments to the United States Constitution and parallel constitutional and statutory provisions in the state of Ohio.

{¶ 106} "Proposition of Law No. VII:   Ohio's death penalty statute mandates that the nature and circumstances of the offense can only be considered as mitigating factors; thus, their consideration as aggravating factors, as well as appeals to emotion, violates this statute and defendant's right to be free from arbitrary infliction of the death penalty as guaranteed by the Eighth Amendment to the United States Constitution, and parallel state provisions.

{¶ 107} "Proposition of Law No. VIII:   Although multiple charges of aggravated murder may be submitted to the jury during the guilt phase of trial, where there is only one death charge there can be only one conviction, and presentation to the jury of multiple counts, with multiple specifications, followed by imposition of multiple death sentences, violates defendant's right to be free from cruel and unusual punishment under the state and federal Constitutions.

{¶ 108} "Proposition of Law No. IX:  The alternative provisions of O.R.C. § 2929.04(A)(7) are mutually exclusive and, where one is presented to the jury as an aggravating circumstance, inclusion of the other undermines the required reliability of the jury's determination, in violation of the Eighth Amendment to the United States Constitution and by parallel state constitutional provisions.

{¶ 109} "Proposition of Law No. X:  The Sixth Amendment to the United States Constitution, and the parallel provision in Ohio's Constitution, require that juries be a cross-section of the jurisdiction where a defendant is tried, and systematic exclusion of prospective jurors opposed to the death penalty violated defendant's right to a fair and impartial jury which reflects the community from which it is drawn, as guaranteed by the state and federal Constitutions.

{¶ 110} "Proposition of Law No. XI:  An instruction to the jury at the penalty phase of trial that it could not be governed by considerations of sympathy, improperly restricts consideration of legitimate mitigating factors, in violation of

the prohibition against cruel and unusual punishment embodied in the state and federal Constitutions.

{¶ 111} "Proposition of Law No. XII:  Imposition of the death penalty without proof beyond a reasonable doubt of all statutory aggravating circumstances violated defendant's rights under the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and corresponding provisions of the Ohio Constitution.

{¶ 112} "Proposition of Law No. XIII:  Use of the same operative fact to first elevate ordinary murder to aggravated murder and then to capital, death eligible, aggravated murder violates defendant's protection against cruel and unusual punishment as secured to him by the Eighth Amendment, and the right to due process and equal protection of law under the Fourteenth Amendment and corresponding provisions of the Ohio Constitution.

{¶ 113} "Proposition of Law No. XIV:  Imposition of the sentence of death on defendant violates his rights under the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the federal Constitution, and his right to due course of law and punishment not cruel and unusual under the Ohio Constitution.

{¶ 114} "Proposition of Law No. XV:  Defendant's sentence violates the Eighth and Fourteenth Amendments to the Constitution of the United States, and parallel state provisions, because it is disproportionately severe in relation to the crime committed, and to sentences visited upon others for the same crime in the same and other jurisdictions.

{¶ 115} "Proposition of Law No. XVI:  Defendant's death sentence must be set aside because it is disproportionately severe when compared to other cases in Hamilton County and in the state of Ohio in which capital sentencing decisions were made.

{¶ 116} "Proposition of Law No. XVII:  The combined effect of errors in evidentiary rulings, and rulings on pretrial motions denied defendant a fair and impartial disposition of his case, and made imposition of the death penalty arbitrary, all in violation of defendant's rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitutions [*sic*], and parallel state provisions."