DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment of conviction and sentence. A jury found Stephanie Booth, defendant below and appellant herein, guilty of felonious assault in violation of R.C. 2903.11(A)(2), and criminal trespass in violation of R.C. 2911.21. The following error is assigned for our review:
"The trial court erred in failing to instruct the jury on the offense of assault, Ohio Revised Code § 2903.13(A), a lesser included offense of felonious assault, Ohio Revised Code § 2903.11(A)(2) although requested by appellant Stephanie Booth."
 {¶ 2} Arlie Dale Manns and Brian Booth were school friends but lost contact after they completed their education. They ran into each other again in January, 2002, when Booth installed some appliances for Manns's mother. As they got re-acquainted, Manns also met Booth's wife, Stephanie Booth, appellant herein.
 {¶ 3} On February 18, 2002, appellant and her daughter left their home to stay with Manns. Later that evening, Booth appeared at Manns's home and demanded to see his wife and daughter. Officers from both the Proctorville Police Department and the Lawrence County Sheriff's Department arrived at the scene, spoke to Booth and convinced him to leave. Nevertheless, the following day Booth returned and took his wife and daughter home.
 {¶ 4} On March 22, 2002, Booth and the appellant returned to Manns's home where a fight ensued. As Booth and Manns wrestled inside the house, appellant grabbed an axe handle that they kept in their vehicle and beat Manns over the head. The couple left Manns dazed and bleeding on the floor of his house. Appellant also used the axe handle to smash Manns's truck's window. Appellant and her husband then drove home.
 {¶ 5} Somewhere between Manns's residence and their own home, appellant and her husband stopped on the side of a road and abandoned a three month old puppy that belonged to Manns and disposed of the axe handle. The puppy was found the next day wandering the countryside. The axe handle, however, was not recovered by the authorities.
 {¶ 6} On April 10, 2002, the Lawrence County Grand Jury returned an indictment charging appellant with burglary in violation of R.C.2911.12(A)(2), felonious assault in violation of R.C. 2903.11(A)(2), theft in violation of R.C. 2913.02(A)(1), and criminal damaging in violation of R.C. 2909.06(A)(1). At the jury trial two very different accounts of the attack and the preceding events were recounted.[1]
 {¶ 7} Manns testified that appellant asked to stay with him in February because Booth physically abused her. Because he wanted to help, he allowed appellant to move into his home and he intended to rent her a room. Manns denied that he was romantically involved with appellant. After appellant left and she and her husband reconciled, Manns reported that he received threats from Booth and that someone punctured his tires.
 {¶ 8} On the evening of the assault, Manns related that after he had dinner with his parents he went home. Shortly after he arrived, he heard glass breaking. He opened his front door and saw appellant and Booth. Manns began to call 911, but Booth barged into the house and began fighting. After a struggle, Manns looked up to see appellant standing over him "like she was getting ready to chop wood." Appellant then struck him several times with what he believed was a baseball bat. After the assailants left, Manns called 911 and his mother. After the authorities arrived Manns was transported to the hospital where he received "stitches" and "staples" on his head.[2]
 {¶ 9} The defense drew a very different picture of this incident. Appellant testified that almost immediately after Manns met her for the first time, he told her he "wanted to start seeing" her. Appellant related that she "fell for it," had sexual relations with Manns and agreed to leave her husband and to live with Manns.[3] Appellant regretted her decision almost instantly and, despite moving in with Manns in February, she agreed to return home with Booth the following day.[4]
Appellant and her husband both testified to the effect that after she left Manns, he started to make phone calls and to drive by their residence. On the evening of March 22, 2002, appellant picked up her husband at work. The two cashed his paycheck, made a payment on some furniture and then stopped at a Wendy's for food. While Booth was inside, Manns allegedly circled the restaurant "flipping" them off and yelling obscenities. Upset over this incident, Booth decided to confront Manns.
 {¶ 10} Appellant and Booth drove to Manns's home and Booth walked to the door to speak with Manns. Booth testified that Manns came to the door carrying his puppy and tried to get the dog to bite him. When that failed, Booth claimed that Manns put him in a headlock and dragged him inside the house to fight. Fearful for her husband's safety, and remembering Manns had a gun in his home, appellant admitted that she grabbed the axe handle, went into the house and beat Manns on the head. Appellant claimed, however, that she intended to merely separate the two combatants and make them stop fighting. Appellant further claimed that in the process, she also struck Booth (her husband) several times in the head.[5]
 {¶ 11} Appellant admitted that she smashed the truck window when she and her husband left the property. Both of them also admitted that they disposed of the axe handle and abandoned the puppy on the side of a road. They claimed, however, that they did not steal the dog. Rather, appellant and Booth maintained that the puppy jumped into their vehicle and was not discovered until after they left the premises.
 {¶ 12} At the conclusion of the trial, appellant requested an assault instruction as a lesser included offense of felonious assault. The trial court denied appellant's request. Subsequently, the jury found appellant guilty of felonious assault and criminal damaging, but not guilty of burglary.[6] The matter came on for sentencing on September 18, 2002, at which time the court heard from both the victim and appellant and discussed the pertinent statutory criteria. The trial court imposed a three year prison sentence on the felonious assault conviction and a sixty day jail sentence on the criminal damaging conviction, but ordered that both sentence be served concurrently. This appeal followed.[7]
 {¶ 13} Appellant asserts in her assignment of error that the trial court erred by denying her request for an instruction on assault as a lesser included offense of felonious assault.[8] Although we do not dispute appellant's contention that assault is a lesser included offense of felonious assault, see e.g. State v. Gunther (1998),125 Ohio App.3d 226, 239, 708 N.E.2d 242; State v. Smith (1990),68 Ohio App.3d 692, 697, 589 N.E.2d 454, we disagree that appellant was entitled to this instruction in light of the evidence adduced in the case sub judice.
 {¶ 14} Jury instructions on lesser offenses are required when the evidence at trial reasonably supports both an acquittal on the crime charged and a conviction on the lesser included offense. See State v.Robb (2000), 88 Ohio St.3d 59, 74, 723 N.E.2d 1019, 1039; State v.O'Neal (2000), 87 Ohio St.3d 402, 412, 721 N.E.2d 73, 85; State v.Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, at paragraph two of the syllabus. The only difference between felonious assault under R.C.2903.11(A)(2), and simple assault under R.C. 2903.13(A), is that the former offense is committed with "a deadly weapon" whereas the latter is not. Gunther, supra at 239-240. Thus, in order to be entitled to an instruction on assault, the evidence adduced below must reasonably support a finding that appellant did not use a "deadly weapon" when she attacked Manns. Appellant argues that she used the axe handle merely as a device to break up the fight between her husband and Manns and did not wield it as a deadly weapon. In particular, appellant asserts that the issue is, after considering the evidence adduced at trial most favorably to the appellant, whether the "device" used to "break up a fight between two adult males * * * could be interpreted by the jury as a weapon, but not a deadly weapon as not capable of inflicting death or not a deadly weapon at all as it was not used as a weapon but rather as a device to end violent acts of two males." We are not persuaded.
 {¶ 15} By her own admission, appellant struck Manns several times with an "axe handle," wrapped in duct tape, that she and Booth kept in their vehicle. A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and . . . specially adapted for use as a weapon or possessed, carried, or used as a weapon." R.C. 2903.11(E)(1) 2923.11(A). An axe handle wrapped in duct tape is capable of inflicting death. In other cases, similar instruments have been deemed to be "deadly weapons." See State v. McMillen (Oct. 2. 1995), Ashtabula 94-A-0050 (metal pipe and axe handle); State v. Hensley (Jun. 27, 1991), Crawford App. No. 3-90-16 (blunt end of a hatchet); State v. Pope (Oct. 4, 1990), Logan App. No. 8-89-19 (handle of a toilet plunger). In addition, the uncontroverted evidence showed that the handle was wrapped in duct tape and was carried in the front of their vehicle. Apparently, the axe handle was adapted to be used as a weapon and was kept in the vehicle for that purpose.
 {¶ 16} In light of the uncontroverted evidence adduced in the case sub judice, including appellant's own testimony concerning the circumstances of the assault, we agree with the trial court's conclusion that the jury could not have reasonably found that the axe handle was not a deadly weapon and acquitted her of felonious assault. The appellant used a "deadly weapon" to accomplish her objective. The axe handle is "capable" of inflicting death. Also, appellant used the axe handle not once, but several times to strike Manns's head. Moreover, by her own admission, Manns was pinned underneath her husband at the time she struck him. Thus, evidence further negates appellant's claim that she hit Mann in order to simply to break up the fight.
 {¶ 17} For these reasons, we find no merit in the assignment of error and it is hereby overruled. Accordingly, we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. Harsha, J.: Concur in Judgment Opinion.
[1] Charges were apparently filed against Booth but there is no mention of those offenses in the record of this case. The two cases were consolidated for purposes of trial.
[2] Photographs introduced into evidence revealed that after the assault Manns was bleeding profusely from the top of his head.
[3] Appellant also testified that she was taking various pain medications related to a previous hysterectomy and, consequently, may not have been thinking clearly.
[4] Although he admitted to an incident of domestic violence in 1996, Booth denied that he assaulted his wife in February, 2002.
[5] Appellant and her husband both testified that he received a large knot on his head. However, none of the Sheriff's Deputies who spoke with them after the fracas noted any injury to Booth.
[6] Although there is no entry in the record, it appears from the transcript of the sentencing hearing that the theft charge was dismissed nolle prosequi.
[7] The sentencing entry and the September 5, 2002 judgment on the verdicts refer to appellant's conviction for criminal damaging as one for "criminal trespass." There is no explanation for this change in the record. However, because neither side raises this issue as error, we will disregard it for purposes of our analysis.
[8] Felonious assault occurs when someone knowingly causes or attempts to cause physical harm to another by means of a deadly weapon. R.C.2903.11(A)(2). Assault occurs when someone knowingly causes or attempts to cause physical harm to another. R.C. 2903.13(A).