OPINION
Defendant-appellant Renee Ann Gaul appeals her conviction and sentence from the Stark County Court of Common Pleas on one count of murder, in violation of R.C. 2903.02(A).
 STATEMENT OF THE FACTS AND CASE
On July 17, 1998, the Stark County Grand Jury indicted appellant on one count of murder in violation of R.C.2903.02(A). At her arraignment on July 24, 1998, appellant entered a plea of not guilty to the charge in the indictment. A jury trial commenced on September 28, 1999. The following evidence was adduced at trial: The appellant, Renee Ann Gaul, had a romantic relationship with the victim, Mancel Linkous, for approximately one year. Testimony showed that their relationship was often volatile. Testimony showed that appellant had bragged to Mark Linkous about her ability to have people beaten up and about having previously had the windows knocked out of the victim's car. Mark Linkous explained that a common argument theme was the victim's wife. During the afternoon of July 9, 1999, at approximately 2:00 P.M., appellant and the victim went to the home of Robert Dobb, the victim's uncle, where a party was ongoing. Appellant and the victim began drinking alcoholic beverages and both were seen smoking crack cocaine. The two began arguing at the party. At one point during the argument, appellant and the victim each slapped one another. The victim then left the party, leaving appellant behind. At approximately 8:00 P.M., appellant decided to leave the party and took Mark Linkous and Robert Linkous with her. The three went back to appellant's apartment. Appellant continued to consume alcohol and drugs. At approximately 2:00 A.M. on July 10, 1998, appellant became restless and wanted to drive around. She took Mark Linkous with her for this drive. The ride resulted in appellant and Mark Linkous arriving at an apartment complex located at 3109 Kalahari, Canton, Ohio, where Charles Davis, Jr., an acquaintance of appellant and the victim, resided. Apparently, unbenounced to appellant, the victim had walked to the home of Charles Davis after leaving the party. Prior to the arrival of appellant, Davis and the victim had agreed that the victim could spend the night at Davis' apartment. The victim had also told Davis that he and appellant had been fighting earlier in the evening. Mark Linkous stayed in the car while appellant went to Davis' apartment. Eventually Linkous became impatient and went inside the apartment to find out what was taking appellant so long. When Mark Linkous entered the apartment, he saw appellant and the victim talking. As it appeared that appellant and the victim did not plan to leave, Mark Linkous went into the living room and lay down on the couch to go to sleep. Mark Linkous overheard the victim telling appellant that they were through. At that point, the victim was sitting on a living room chair and appellant wanted the victim to accompany her into the kitchen. Eventually, appellant pulled the victim up from the chair and the victim went with her into the kitchen. Mark Linkous testified that he then shut his eyes and attempted to go to sleep. He did not hear anything for approximately five minutes. He then heard the victim call for him. The victim stated that "I need help, Renee just stabbed me." Mark Linkous testified that he got up and saw the victim in the kitchen hallway, with a bloody knife in his hand and blood all over him. Mark Linkous ran to the door of the apartment just in time to see appellant pulling away in her vehicle. Mark Linkous screamed for help and went outside. The victim followed Mark Linkous outside and the victim collapsed on the lawn. Mark Linkous then ran back into the apartment to awaken Davis. Linkous told Davis that the victim had been stabbed by appellant. Davis then left the apartment to get help. When he returned to the yard, he saw the victim lying face down, choking for air. The knife was lying beside the victim. When helped arrived, the victim was taken to Mercy Medical Center where he was pronounced dead at 5:58 A.M., July 10, 1998. When the Canton Police Department responded to the scene, the victim had already been transported to the hospital. Large blood drops were found on the steps of the front stoop to Davis' apartment. There was also blood on the grass where the victim had been lying. The knife remained next to that area. The detective assigned to the case examined the inside of Davis' kitchen. The detective testified that it did not appear as if there had been a struggle in the kitchen, although the kitchen appeared cluttered. He did not notice any peeled potatoes inside the kitchen. Appellant remained at large until the afternoon of July 11, 1998. Eventually appellant arrived at the home of Fred Clark. While at Clark's house, the police arrived. Appellant went inside the house, climbed out of the second floor onto the roof over the front porch. While on the roof, appellant pulled out a knife and the responding officers drew their weapons. Appellant refused to drop the knife and began stabbing herself. Eventually backup canine units arrived and a canine went onto the roof and helped dragged appellant to the window, where officers arrested her. Although appellant did not testify at trial, testimony showed that she had told three different people three different versions of the crime. Clark testified that appellant told him that she had been peeling potatoes, went to throw the knife into the sink, and happened to hit the victim who came around the corner. Appellant also spoke to David Harless, the arresting officer who rode with appellant from Clark's house to the hospital via ambulance. Appellant told Officer Harless that the victim happened to come around the corner and run right into the knife. Appellant told Jeffrey Warfield that she had stabbed the victim because they were having problems in their relationship. She had told Warfield that she had stabbed him because she loved him. In stabbing the victim, appellant broke off the handle to the knife. Stark County's Chief Deputy Coroner, P.S.S. Murthy, testified. Dr. Murthy explained that appellant had a defensive wound to the palmular aspect of his left middle finger. He explained that the stab wound was to the victim's center left chest. The knife penetrated the victim's sternum, into the pericardial sac which surrounds the heart, and severed the victim's aorta. Dr. Murthy explained that it took considerable force for the knife to travel through the bone of the victim's sternum. In his opinion, the wound could not have been the result of someone throwing a knife at the victim or the victim turning a corner and running into the knife. Appellant presented no witnesses at trial. On October 2, 1998, a jury found appellant guilty of one count of murder. The court sentenced appellant to serve an indeterminate prison term of 15 years to life. It is from this conviction and sentence that appellant prosecutes this appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE STATE OF OHIO'S CONDUCT DURING TRIAL CONSTITUTES PROSECUTORIAL MISCONDUCT.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED IN FAILING TO PROVIDE THE JURY WITH AN INSTRUCTION ON INTOXICATION AS A DEFENSE TO THE CHARGE OF MURDER FILED AGAINST THE APPELLANT.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED IN FAILING TO PROVIDE THE JURY WITH AN INSTRUCTION ON ACCIDENT AS A DEFENSE TO THE CHARGE OF MURDER FILED AGAINST THE APPELLANT.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ERRED IN PERMITTING THE STATE TO OFFER INCRIMINATING HEARSAY TESTIMONY IN VIOLATION OF RULE 802 OF THE OHIO RULES OF EVIDENCE.
 ASSIGNMENT OF ERROR V THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO ARGUE AND PRESENT EVIDENCE REGARDING APPELLANT'S PRIOR BAD ACTS.
 ASSIGNMENT OF ERROR VI THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION, AND THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR VII APPELLANT WAS PREJUDICIALLY DEPRIVED OF HER UNITED STATES AND OHIO CONSTITUTIONAL RIGHTS TO A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL.
 ASSIGNMENT OF ERROR VIII OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I
In the first assignment of error, appellant contends that the prosecutor committed prosecutorial misconduct during the closing arguments. We disagree. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1991), 51 Ohio St.3d 160, 165, cert. den. 112 L.Ed.2d 596. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987),33 Ohio St.3d 19, 24. Appellant contends that the following comments by the Prosecutor constituted prosecutorial misconduct because they infringed upon appellant's right to remain silent during a criminal trial, thereby raising a question in the jury's mind about her silence to her prejudice: Coincidence. She drops the knife and it stayed up and down and he fell on it. And he had his hands behind his back and then fell all the way on it. He didn't put his hands out and catch himself. Maybe that's what happened.
Well, we know that didn't happen. We know he never went down in that home. If that happened would you have just drops of blood like you have when you were walking and the drops of blood are dropping down. If you fall down on a knife like that, hit down, there is going to be evidence of that. And you don't have that.
Two more days on the run, she would have been saying he committed suicide.
MS. LANE: Objection.
 THE COURT: Sustained. Disregard that comment. Transcript of Proceedings, pp. 50-51 (Emphasis added).
We do not agree that these comments infringed upon appellant's right to remain silent. A review of the comments in light of the record leads us to conclude that the comments were directed at testimony showing that appellant told several persons different stories as to how the victim came to be stabbed. Appellant first told Warfield that she had stabbed the victim because she loved him. She then told Clark that she had been peeling potatoes and stabbed the victim when she went to throw the knife into the sink and he walked around the corner. Lastly, she told the arresting officer that the victim came around a corner and walked into the knife. These versions of the story show a diminishing level of responsibility by appellant with each telling. Even if we were to find the Prosecutor's comment error, we find that this one comment did not deny appellant a fair trial, especially since the trial court issued a curative instruction and ordered the jury to disregard the Prosecutor's comment. Appellant's first assignment of error is overruled.
 II
In the second assignment of error, appellant contends that the trial court erred when it failed to sua sponte instruct the jury on the defense of intoxication. We disagree. First, appellant's trial counsel failed to request a jury instruction on the defense of intoxication. Therefore, all but plain error is waived. Crim.R. 30(A); Crim.R. 52; State v. Williford (1990), 49 Ohio St.3d 247, 252, 551 N.E.2d 1279. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus; State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191. In the case, sub judice, the State was required to prove that appellant purposely caused the death of the victim. A person acts purposely when it is their intention to cause a certain result. R.C. 2901.22(A). Voluntary intoxication may, under extreme circumstances, negate one's specific intent. State v. Fox (1981), 68 Ohio St.2d 53, 55, 428 N.E.2d 410. However, only where the defendant was "so intoxicated as to be mentally unable to intend anything" does intoxication create a reasonable doubt as to the defendant's ability to form the specific intent essential to the charged felony. State v. Jackson (1972), 32 Ohio St.2d 203, 206, 291 N.E.2d 432, 433. Intoxication can co-exist with the ability to form an intention or act purposely. State v. Hicks (1989), 43 Ohio St.3d 72,538 N.E.2d 1030. While there is evidence that appellant had been drinking and using drugs prior to the stabbing, there is no evidence that intoxication affected appellant's ability to form an intention. Appellant drove to the apartment at which she found the victim. Once inside the apartment, appellant carried on a conversation with the victim, culminating in her asking him to accompany her to the kitchen. Eventually, appellant pulled the victim from the chair in which he was sitting. Thereafter, the two went into the kitchen. Following the stabbing, appellant fled the scene by driving away in her automobile. This evidence does not support a lack of ability to form an intention. Also, the appellant never said that she was so intoxicated that she stabbed the victim but did not mean to, in any of the three versions she gave of the incident to others. The evidence does not reasonably raise the defense of intoxication and, therefore, we find that it was not error, plain or otherwise, for the court to fail to sua sponte instruct the jury on the defense of intoxication. Appellant's second assignment of error is overruled.
 III
In the third assignment of error, appellant argues that the trial court erred when it failed to sua sponte instruct the jury on the defense of accident. We disagree. Initially we note that appellant did not request such an instruction. Therefore, all but plain error is waived. Crim.R. 30(A); Crim.R. 52; State v. Williford (1990), 49 Ohio St.3d 247,252, 551 N.E.2d 1279. A court's instructions to the jury should address the issues as presented by the evidence. State v. Guster (1981), 66 Ohio St.2d 266, 271, 421 N.E.2d 157. In the case sub judice, appellant's counsel suggested that the victim might have fallen on the knife. Witnesses who spoke with appellant after the stabbing testified that she had told them it was accidental. However, each of those witnesses testified that appellant gave them a different explanation as to how the "accident" occurred. In addition, one witness testified that appellant told him that she intentionally stabbed appellant because she became enraged. Further, the physical evidence did not support a jury instruction on the defense of accident. The coroner testified that it took extreme force to drive the knife through the victim's sternum into the pericardial sac around the heart and sever the aorta. In the coroner's opinion, the wound could not have been caused as the result of the accidents suggested by statements by appellant, i.e. someone throwing a knife at the victim or the victim turning a corner and walking into the knife. The trial court's failure to sua sponte instruct the jury on accident did not rise to the level of plain error. Appellant's third assignment of error is overruled.
 IV
In the fourth assignment of error, appellant contends that the trial court erred to appellant's prejudice when it allowed the State to present incriminating hearsay statement in violation of Evid.R. 802. We disagree. Appellant cites this court to testimony during which a witness, Charles Robert Davis, Jr., testified that the victim stated that the victim and the appellant had been arguing previously and to testimony by Davis that Mark Linkous, the victim's brother, told Davis that appellant had just stabbed the victim. We will address each in turn. We find that statements showing that appellant and the victim had been arguing were hearsay. The following testimony was elicited:
 Q. Did he indicate to you at that time, why he needed to spend the night there?
A. He said that they were arguing.
MISS LANE: Your Honor, I would object to that.
THE COURT: Overruled.
BY MR. JACKSON:
Q. Did you know who he meant when he said they were arguing?
 A. Well, he said him and Renee, they were out running around I guess. I'm not really sure because I was a little drunk at that time. (2 Tr., p. 133).
Moments later the prosecutor engaged in the following: Q. Okay. So you tell him, you know, come on in and you guys have a seat down at the kitchen table drinking, talking guy stuff. Would that be fair to say?
A. Just talking, yeah.
Q. And he had mentioned that he and Renee were fighting?
A. Yeah.
 Q. And so it was two guys sitting around and talking. Is that essentially what you were talking about?
A. Yeah.
(2 Tr., pp. 152-153).
This testimony appears to have been elicited to prove that appellant and the victim had been arguing. Even though we find this testimony to be hearsay, any error committed by allowing this testimony was harmless. Another witness, Mark Linkous, testified that he observed the victim and appellant arguing that night at a party and saw them slap each other. Shortly after this fight, appellant left the party. Therefore, Davis' testimony that the victim stated that he and appellant had been arguing was cumulative and harmless. See State v. O'Neal (2000), 87 Ohio St.3d 402, 411,721 N.E.2d 73. The prosecutor elicited a hearsay response from his witness, when he asked: Q. What is the next thing that happened as far as when you woke up? (2 Tr., p. 138).
The answer that followed was:
 A. Mark, Mancel's cousin, came and woke me up and he said you have to get up because Renee just stabbed Mancel. . . . (2 Tr., p. 138).
As to this testimony by Davis that he was awoken by Mark Linkous who told Davis that appellant had just stabbed the victim, we find that the testimony was admissible as an excited utterance. An excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). The startling event must be such that it renders normal reflective thought processes inoperative. State v. Smith (1986), 34 Ohio App.3d 180,189, 517 N.E.2d 933, 943-944. Mark Linkous testified that he heard the victim call for help. When Mark Linkous went towards the kitchen where the victim was, he was met by the victim. The victim had a knife in one hand and was covered in blood. Mark Linkous testified that the victim stated "Renee just stabbed me." Tran. At 297. Shortly thereafter, the victim fell and did not respond to Mark Linkous. At that point, Mark Linkous could hear that the victim was having trouble breathing. When no one responded to Mark Linkous' calls for help, Linkous went to awaken Davis. Tran. at 299-300. Once Mark Linkous awakened Davis, Davis got up, found blood in the kitchen and saw the victim laying on the ground. Davis described Mark Linkous as looking scared. Tran. at 138-139 While we recognize that the challenged testimony contains multiple layers of hearsay, we find that it is admissible under the excited utterance exception. Each person involved, the victim, Mark Linkous and Davis, were directly involved in a startling event. These statements were made immediately after the startling event with little, if any, time for reflective thought between the time of the stabbing and the time when Linkous awakened Davis. We find that the statements were admissible pursuant to Evid.R. 803(2) as excited utterances. In addition, the testimony of Mark Linkous at trial made it clear that he had not witnessed the stabbing. Therefore, the statement he made to Davis was not prejudicial to the appellant. Assignment of error IV is overruled.
 V
In the fifth assignment of error, appellant argues that the trial court erred when it allowed evidence regarding prior bad acts committed by appellant. Specifically, appellant challenges testimony that appellant and the victim argued frequently, mostly arguing about the victim's wife. Since appellant's trial counsel did not object to the testimony, all but plain error is waived. Therefore, should we find error, reversal is warranted if, but for the error, the outcome of the trial would clearly have been otherwise. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus; State v. D'Ambrosio (1993), 67 Ohio St.3d 185,191. Evid.R. 404(B) of the Ohio Rules of Evidence provides as follows: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
This Rule of Evidence is codified in Section 2945.59 of the Ohio Revised Code, which provides: In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant. While we recognize R.C. 2945.59 is to be strictly construed against the State, and to be conservatively applied by the trial court, we find that the testimony presented was admissible to show absence of mistake or accident on the part of appellant. The State was required to show that appellant purposely caused the death of the victim. R.C. 2903.02(A). Appellant concedes that trial counsel sought to raise the issue of accident, through cross-examination of the state's witnesses. We find that, pursuant to R.C. 2945.59 and Evid.R. 404(B), it was not error for the State to present evidence that the stabbing was not an accident or mistake. Appellant, in his brief, argues that even if the other acts evidence was offered for a proper purpose, it should have been excluded as irrelevant. Further, should the evidence be found to be relevant, appellant argues the evidence confused the jury as to the real issue, in violation of Evid.R. 403. Appellant contends the jury was mislead into a determination of appellant's guilt based upon her past conduct rather than on the facts of the current action. We disagree. Evidence Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." All relevant evidence is admissible, except as otherwise provided by law. Evid.R. 402. Evidence Rule 403(A) calls for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. We conclude that the evidence was relevant and that the probative value of the evidence outweighed any prejudicial effect, including confusion of the issues. We reject appellant's contention that the jury was mislead into convicting appellant of murder by evidence that appellant and the victim argued often. Lastly, even if we were to find that the admission of the evidence was error, we do not find that is was plain error. Testimony showed that, at a party, appellant and the victim argued the night of the stabbing and that each had slapped the other. Just prior to the stabbing, appellant and the victim were arguing. We find that the testimony that the two had argued in the past did not affect the outcome to the extent that "but for" the challenged testimony, the outcome of the trial would have been different. Therefore, even if we were to find error, we do not find plain error. Assignment of error V is overruled.
 VI
In the sixth assignment of error, appellant contends that the conviction was not supported by the evidence and was against the manifest weight of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175, 485 N.E.2d 717. Testimony was presented that appellant had previously made threats against the victim and that appellant had bragged about having the victim's car vandalized. The evidence showed that on the night of the stabbing, appellant and the victim had argued. During the first argument, they slapped each other. The victim then left the company of appellant. Appellant went for a drive which ended with appellant finding the victim at the apartment of Davis, a friend of the victim. At Davis' apartment, the two argued again. After appellant told the victim to come home with her, the victim told appellant that their relationship was over. That prompted appellant to force the victim out of his chair to make him accompany appellant to the kitchen. Shortly thereafter, the victim yelled for help and came out of the kitchen holding a knife, covered with blood and claiming that appellant had just stabbed him. The witness who went to the victim's aid looked for appellant and saw her fleeing the scene in her automobile. Testimony showed that, after the incident, appellant explained to Warfield, a friend of appellant's, that she stabbed the victim because she loved him. The coroner testified that the victim had been stabbed with such force that the knife blade penetrated the sternum, cut into the pericardial sac and severed the victim's aorta. The coroner stated that the wound required too much force for the injury to be consistent with an accident. We find sufficient, competent evidence existed to demonstrate that appellant purposely killed the victim. We also find that the jury did not lose its way when it rejected any contention that the stabbing was an accident or that appellant was too intoxicated to be held responsible for her actions. Further, the conviction does not create a manifest miscarriage of justice. In sum, the conviction was supported by sufficient evidence and, also, was not against the manifest weight of the evidence. Appellant's sixth assignment of error is overruled.
 VII
In the seventh assignment of error, appellant claims that she was prejudicially deprived of her constitutional rights to a fair trial due to ineffective assistance of trial counsel. Appellant maintains that trial counsel was ineffective when counsel failed to request jury instructions on intoxication and accident, requested a jury instruction on flight and failed to object to the admission of hearsay and testimony regarding appellant's prior bad acts. We disagree. The standard of review for a claim of ineffective counsel was established in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 and adopted by Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases set forth a two-pronged analysis. The first prong of the analysis requires a showing that counsel's assistance was ineffective in that it fell below an objective standard of reasonable representation and violated essential duties to the client. The second prong requires a showing of actual prejudice by counsel's ineffectiveness such that but for the counsel's unprofessional error the outcome of the trial would have been different. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. Bradley, 42 Ohio St.3d at 143 (citing Strickland, 466 U.S. at 697.) Counsel was not ineffective for failing to request jury instructions on intoxication and accident. Based on the evidence elicited by appellant's counsel during cross examination of the State's witnesses, it is certainly arguable that had appellant's counsel requested these instructions, they might have been given. However, based on all the evidence, we do not find that the outcome of the trial would have been any different had the jury instructions been given. Appellant further argues that trial counsel's request for the jury instruction on flight constituted ineffective assistance of counsel. Initially we note that the requested jury instruction was a standard instruction on flight and an accurate statement of the law. Further, there was evidence that appellant had fled. As such, we cannot not find that trial counsel was ineffective for requesting a jury instruction that was appropriate in regards to the evidence presented to the jury and an accurate statement of law. Lastly, we consider whether trial counsel was ineffective for failing to raise an objection to the testimony challenged on appeal as being hearsay and inadmissible evidence of prior bad acts. Pursuant to our holding that it was not error to admit the challenged testimony, we find that trial counsel was not ineffective for failing to object to the testimony. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91,95, 430, N.E.2d 954. In addition, we do not find that the outcome of the trial would have been different if this testimony had all been excluded from the trial. Appellant's seventh assignment of error is overruled.
 VIII
In his final assignment of error, appellant maintains there are errors which are apparent on the record but not raised in his brief. We disagree. Appellant cites to the case of Anders v. California (1966), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493. In Anders, appointed counsel found his indigent client's case to be wholly frivolous and without merit. The United States Supreme Court held it was error for counsel to advise the appellate court by letter without filing any motion or brief on behalf of his client. The matter currently before the court is distinguishable from Anders in that appellant's appellate counsel filed a brief and in fact assigned seven other errors for review. An Anders claim under this assignment of error has no merit. A review of the record does not reveal any error which would warrant a reversal of appellant's conviction or sentence. Appellant's eighth assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.