OPINION
Defendant, Darrell Breeding, appeals from his conviction and sentence after a trial by jury for improperly discharging a firearm into a habitation and tampering with evidence.
The evidence presented by the State demonstrated that during the early morning hours of August 6, 1995, Darryl Breeding went to the home of his girlfriend, Diana Donaldson, at 1157 Vester Avenue, in Springfield. Breeding used his key to enter the residence. When Breeding called out to Donaldson and received no reply, he became concerned and took out the gun Donaldson kept at the residence for protection.
Breeding entered the attached garage and discovered Donaldson, undressed, inside her car with another man, Brian Cummins. Breeding later told police he became angry and fired a shot at Donaldson to frighten her as she ran through the door from the garage into her residence. Breeding also pointed the gun at Cummins. He threatened to kill him and ordered Cummins to leave. Cummins left and immediately called police.
Breeding put a piece of tape over the bullet hole in the door, concealed the gun in a closet, and then hid under a pile of clothes in the closet, where police found him. Police discovered an empty shell casing on the floor of the garage and a bullet hole in the door between the garage and the residence. On the other side of that door, inside the residence, police discovered a spent bullet. Police located the gun inside a closet.
The evidence presented by the defense depicted a different version of the events. According to the defense witnesses, after Breeding entered the garage and discovered Donaldson with Cummins, Breeding confronted Cummins and a physical struggle over the gun ensued, during which the gun accidentally discharged. According to both Breeding and Diana Donaldson, Breeding did not fire the gun at Donaldson. Breeding and Donaldson also testified that Prosecutor David Smith ignored repeated requests by Donaldson to dismiss these charges, and unjustly prosecuted Breeding because Breeding had asserted his legal interest in an expensive car that had been seized from a drug dealer, preventing Smith from using or acquiring that vehicle.
Darrell Breeding was indicted on one count of Felonious Assault, R.C.2903.11, and one count of Discharging a Firearm At Or Into A Habitation, R.C. 2923.161. Both charges carried a firearm specification and a specification that Defendant had threatened physical harm with a weapon during the offense. Breeding was also charged with tampering with evidence, R.C. 2921.12. Following a jury trial, Breeding was found guilty of discharging a firearm into a habitation, with both specifications, and tampering with evidence. The trial court subsequently sentenced Breeding to an aggregate term totaling seven to ten years imprisonment.
From his conviction and sentence Breeding has timely appealed to this court.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTIONS FOR ACQUITTAL PURSUANT TO OHIO RULE OF CRIMINAL PROCEDURE 29.
SECOND ASSIGNMENT OF ERROR
 THE JUDGMENT AGAINST THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
With respect to the charge of improperly discharging a firearm into a habitation, Breeding challenged the legal sufficiency of the evidence presented by the State and moved for acquittal at the close of the State's case and again at the close of all the evidence pursuant to Crim.R. 29. Breeding argued that the evidence presented was insufficient to prove that he "knowingly" discharged that firearm. The trial court overruled Breeding's motions for acquittal, finding that the State's evidence established "a prima facie case." Breeding argues on appeal that the trial court applied the wrong legal standard and erred in overruling his motions for acquittal.
Breeding was found guilty of violating R.C. 2923.161
(A)(1) which provides:
 No person, without privilege to do so, shall knowingly do either of the following:
 Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual.
Knowingly is defined in R.C. 2901.22:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. The motion will be granted only if reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense. State v. Miley (1996), 114 Ohio App.3d 738.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
At oral argument before this court, the State conceded that the trial court had applied the wrong legal standard, a prima facie case, in overruling Breeding's Crim.R. 29 motions for acquittal. Upon reflection, we are not as sure. The "prima facie case" standard requires proof sufficient to withstand a motion for directed verdict in a civil case. A Crim.R. 29 motion performs the same function in a criminal case. It may be that the lesser burden of proof in a civil case makes the prima facie case standard inappropriate in criminal cases. Indeed, it is rarely, if ever, mentioned in that context. We need not resolve the issue, however. Even if a trial court has applied the wrong legal standard to determine an issue before it, an appellate court may sustain the ruling on different grounds if the grounds involved are supported by evidence adduced before the trial court. State v. Peagler (1996),76 Ohio St.3d 496 . Applying the correct legal standard to this issue of sufficiency of the evidence, which is a question of law, we conclude that the State's evidence, if believed, is evidence from which reasonable minds could conclude that all of the elements of the offense were proved beyond a reasonable doubt.
Brian Cummins testified that he remembered Diana Donaldson going through the door from the garage into her house when the shot was fired by Breeding, and that the bullet struck the door. Sgt. Ayres testified that Breeding told her that he was upset at finding Donaldson with another man and he fired a shot at Donaldson to frighten her as she ran through the door from the garage into her house. Police discovered a bullet hole in that door and the spent bullet on the other side of that door, just inside the house.
Viewing the foregoing evidence in a light most favorable to the State, as we must for purposes of Crim.R. 29 motion, we conclude that a rational trier of fact could find that all the elements of discharging a firearm into a habitation were proved beyond a reasonable doubt. Breeding's conviction is supported by legally sufficient evidence and the trial court properly overruled his motions for acquittal.
Breeding also argues that his conviction is against the manifest weight of the evidence.
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported.
Breeding claims that his conviction is against the manifest weight of the evidence because both he and Diane Donaldson testified that the gun accidentally discharged during a physical struggle over the gun between him and Cummins. Therefore, Breeding argues, he did not "knowingly" discharge the firearm as R.C. 2923.161 requires. While this testimony conflicts with the testimony of Sgt. Ayres, who stated that Breeding admitted to her that he fired a shot at Donaldson to frighten her, it was for the jury as trier of facts to resolve this conflict and decide which witnesses to believe and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230. In reviewing this entire record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Breeding's conviction is not against the manifest weight of the evidence.
The first and second assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION BY NOT SEPARATING WITNESSES IN ACCORD WITH OHIO RULE OF EVIDENCE 615.
Assistant Clark County prosecutor David Smith was initially assigned to prosecute these charges against Darrell Breeding. Prior to trial, Breeding included prosecutor Smith on his list of potential witnesses. Prosecutor Smith then removed himself as trial counsel for the State in accordance with DR5-102(A), and the matter was reassigned to a different assistant prosecuting attorney.
During the first day of trial, Smith sat at counsel table with the assistant prosecuting attorney representing the State. Breeding did not object. Toward the end of that first day of testimony, Breeding moved for a separation of witnesses per Evid.R. 615, which the trial court ordered. The State, however, requested that Smith be allowed to remain at counsel table as its "designated State's representative." See Evid.R. 615(2). The trial court granted that request over Breeding's objection.
During the defense case-in-chief, both Breeding and Diana Donaldson gave testimony suggesting that Smith had an improper, vindictive motive for bringing these charges against Breeding. They testified that Smith was upset with Breeding because Breeding had asserted his legal interest in an expensive Mercedes automobile which had been seized by the State from a drug dealer, preventing Smith from using or acquiring that vehicle.
During the rebuttal portion of the State's case, Smith testified over Breeding's objection that he had no personal interest in acquiring or using the Mercedes automobile, and that he did not conspire with Sgt. Ayers to unjustly prosecute Breeding.
Breeding argues that the trial court abused its discretion in not enforcing its witness separation order and allowing Smith to remain at the State's counsel table and hear the testimony of all of the other witnesses at trial before he testified on rebuttal. We disagree.
Evid.R. 615 provides:
 At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
Once Breeding placed prosecutor Smith on his list of witnesses, Smith was required by DR5-102 to withdraw from his representation as trial counsel for the State, which he promptly did. That did not, however, affect Smith's status or classification as an employee of the State who was designated by its attorney as its representative. The State is a non-natural party to this criminal proceeding. Per Evid.R. 615(2), the trial court is authorized to exempt from its separation order an employee of a non-natural party designated as that party's representative by its attorney. No abuse of discretion is demonstrated.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE REMOVAL OF THE ONLY AFRICAN-AMERICAN IN THE VENIRE.
During voir dire proceedings the State utilized a peremptory challenge to remove Mr. Mills, the only African-American juror. Breeding immediately objected, arguing that the State's use of its peremptory challenge to remove Mr. Mills was racially motivated and purposeful discrimination designed to exclude minorities from jury service. See Batson v. Kentucky (1986), 476 U.S. 79. After the State explained its reason for striking Mr. Mills, the trial court overruled Breeding's objection.
Breeding now argues on appeal that the trial court erred in overruling his "Batson challenge."
The colloquy between juror Mills and the prosecutor during voir dire which gave rise to the State's peremptory challenge of Mills, is as follows:
 MR. KAVANAGH: Okay. Anybody been arrested before? (No response.)
MR. KAVANAGH: Okay.
JUROR NO. 5: I was arrested from a — from a traffic
MR. KAVANAGH: Pardon me?
JUROR NO. 5: From a traffic.
MR. KAVANAGH: From a traffic citation?
JUROR NO. 5: Yes.
MR. KAVANAGH: Was it driving under suspension or something?
JUROR NO. 5: D.U.I.
MR. KAVANAGH: When was that?
JUROR NO. 5: Last November, right before Thanksgiving.
 MR. KAVANAGH: Okay. I appreciate your speaking up because that's a hard thing to do. Do you remember which — was it a Springfield police officer or was it a —
JUROR NO. 5: Yes. Springfield.
 MR. KAVANAGH: Okay. I don't want to make you uncomfortable. Did you end up pleading guilty or working the case out or what happened there?
 JUROR NO. 5: Yes, I ended up — well, I had spent three days, and afterwards probation for a year.
 MR. KAVANAGH: Okay. Did you — did you feel the officer treated you fairly or unfairly or — I know when I get stopped for speeding tickets, I don't think it's fair.
JUROR NO. 5: Well, in this incident —
MR. KAVANAGH: Okay. You were innocent?
 JUROR NO. 5: I was in the wrong place at the wrong time. It was — I was in — I used the term one of the "good old boy" bars and they called from the bar and the police officers, I think, were close friends.
MR. KAVANAGH: The bar owner?
JUROR NO. 5: Yes.
 MR. KAVANAGH: Okay. It sounds like in that case, you were clearly wrong — I mean, sounds like what you're telling me is that the police weren't on the up and up in that case?
JUROR NO. 5: Yes.
 MR. KAVANAGH: Okay. And have you had other experiences like that with police officers that you find them potentially to be dishonest?
JUROR NO. 5: No, no. My brother-in-law is a detective.
MR. KAVANAGH: Okay.
JUROR NO. 5: In Michigan.
MR. KAVANAGH: Okay. And he's an honest guy?
JUROR NO. 5: Yes, I think so.
 MR. KAVANAGH: Okay. Well, I guess I'll just — do you think you could be fair and impartial in this case based on that prior experience with the police?
JUROR NO. 5: Yes.
The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution precludes purposeful discrimination by the State in the exercise of its peremptory challenges so as to exclude members of minority groups from petit juries. Batson v. Kentucky, supra; State v. Hernandez (1992), 63 Ohio St.3d 577. Batson establishes a three step procedure for evaluating claims of racial discrimination in peremptory strikes. First, the opponent of the strike must make a prima facie showing of discrimination. Second, the proponent must give a race-neutral explanation for the strike. Third, the trial court must determine whether, under all of the circumstances, the opponent has proven purposeful racial discrimination. State v. White (1999),85 Ohio St.3d 433.
In explaining the use of a peremptory challenge to remove Mr. Mills from the jury, the prosecutor told the trial court that the State's case would turn largely upon the credibility of the Springfield police officers involved. In questioning Mills about his previous D.U.I. arrest by Springfield police just three months ago, Mills indicated that he had been unfairly charged in that incident and that the police were "not on the up and up in that case." Thus, the prosecutor harbored some concerns about whether Mills might be biased against the Springfield police or might be unable to fairly assess the credibility of their testimony in this case.
The explanation offered by the prosecutor is certainly race-neutral. Breeding claims that it is nevertheless not a sufficient explanation because Mills stated that he could be fair and impartial despite his previous experience with the police. The race neutral explanation given by a prosecutor during a Batson challenge, however, need not rise to a level justifying a challenge for cause. State v. White, supra. As for the trial court's finding that the State had no discriminatory intent in striking juror Mills, that finding is entitled to some deference since it turns largely on evaluation of credibility. White, supra. Such a finding will not reversed on appeal unless clearly erroneous. State v. O'Neal (2000), 87 Ohio St.3d 402. On this record the trial court's finding that the State lacked any discriminatory intent in striking juror Mills is not clearly erroneous.
The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE DENIED THE DEFENDANT-APPELLANT A FAIR TRIAL.
Breeding alleges that the errors which occurred during trial while perhaps not sufficient individually to deprive him of a fair trial, did so cumulatively. State v. DeMarco (1987), 31 Ohio St.3d 191. We have found no error, however, in the proceedings of the trial court in any of the claims assigned by Breeding in this appeal. Accordingly, Breeding has suffered no prejudice with respect to his claims either individually or cumulatively.
The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR PROSECUTORIAL MISCONDUCT DENIED MR. BREEDING OF A FUNDAMENTALLY FAIR TRIAL AND DUE PROCESS OF LAW GUARANTEED UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
This assignment of error was mistakenly enumerated the fifth assignment in a supplemental brief that Defendant-Appellant filed on December 8, 2000. Though that brief was filed out of time, as a result of a claimed "computer virus," and without the motion for leave that our order of November 27, 2000 stipulated must accompany it, we have determined to rule on the two additional assignments of error presented in the supplemental brief.
In support of this assignment, Defendant-Appellant again alleges misconduct on the part of Assistant Clark County Prosecutor David Smith. Defendant-Appellant makes several arguments in that respect.
First, Defendant-Appellant argues that Mr. Smith never "plea bargained" the charges against him. (Brief, p. 1). We are unaware of any requirement to plea bargain, and Defendant-Appellant has not cited us to one.
Second, Defendant-Appellant argues that Mr. Smith failed to withdraw as State's counsel "until just before trial, sub judice, and continued to refuse to recuse himself even after one judge (Judge O'Neill) had recused himself because of the allegations against Prosecutor Smith." (Brief, p. 1). Those allegations concerned Mr. Smith's alleged desire to have Defendant-Appellant's Mercedes automobile, discussed previously. Mr. Smith denied any such desire or any plan to achieve it. On this record, he was not required to withdraw. Judge O'Neill probably withdrew because, as this court is aware, he and Mr. Smith are next-door-neighbors, and because of that fact the Judge thought it prudent to do so when called upon to decide the claims involved.
Third, Defendant-Appellant claims that "[t]he animus between Mr. Smith and all of the parties in this case is undeniable." (Brief, p. 2). Mr. Smith denies it, however, and it does not become undeniable because those other persons believe it exists.
Fourth, Defendant-Appellant argues that Mr. Smith's desire to have the Mercedes automobile injected a personal interest into the State's case and the outcome of the prosecution. (Brief, p. 3). Mr. Smith denied any such interest. We have no basis to find otherwise.
Fifth, Defendant-Appellant complains that Mr. Smith refused to return the victim's phone calls, and that when she came to see him he "pushed her out of his office and slammed the door in her face." (Brief, p. 5). We are not told what she wished to relate to Mr. Smith, so we cannot determine how his refusals amount to misconduct.
Sixth, Defendant-Appellant complains of "Mr. Smith laughing during one of the two alleged complaining witnesses' testimony." Id. We are not told what that testimony was or how laughing at it amounted to prosecutorial misconduct. As Mr. Smith was then no longer the State's legal representative, that was not possible.
The ultimate and controlling issue in any claim of prosecutorial misconduct is whether the defendant was prejudiced by the conduct involved. State v. Moritz (1980), 63 Ohio St.2d 150. Defendant-Appellant has failed to portray any prejudice that resulted from these matters. Indeed, they are no more than his frustration in not having the proceedings conducted as he would have them conducted. That does not demonstrate prejudice.
The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR THE DEFENDANT-APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 10, 16 OF THE OHIO CONSTITUTION.
Defendant-Appellant points to the fact that he claimed a violation of his speedy trial rights at the commencement of the trial proceeding. However, he fails to state what facts constitute the violation, where in the record these facts are portrayed, or how the trial court erred in determining his claim.
Defendant-Appellant has wholly ignored the requirements of App.R. 16(A)(6) and (7). We are not disposed to assemble his argument for him.
The seventh assignment of error is overruled.
 Conclusion
Having overruled the assignments of error presented, we will affirm the judgment from which this appeal was taken.
WOLFF, J. and FAIN, J., concur.