[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} Defendant-appellant Derrick Baldwin appeals from the judgment entered by the trial court, following a jury trial, convicting him of two counts of aggravated robbery, with an accompanying firearm specification, and two counts of robbery. For purposes of sentencing, the robbery counts were merged with the aggravated-robbery counts. The trial court sentenced Baldwin to a seventeen-year prison term: consecutive terms of four years and ten years for the aggravated robberies after a three-year term for the firearm specification. On appeal, Baldwin raises three assignments of error.
 {¶ 3} On April 12, 2001, shortly before midnight, Harvest Spears and his girlfriend parked in front of his house. Spears stepped out of his automobile and was walking towards his front door to unlock it when two masked men accosted him. Spears testified that the men had guns. Spears was shot in the leg before the men stole Spears's automobile. The man who shot Spears was the getaway driver. Spears's girlfriend, initially in the front passenger seat, had an altercation with the other masked assailant, defendant-appellant Baldwin, who hit her in the arm with his gun in an effort to wrestle her purse away from her. When she was finally pulled out of the automobile, Baldwin replaced her in the front passenger seat. Just before driving off with the stolen automobile, the two men removed their masks. Spears's girlfriend testified that it was at that time that she saw both men through the open front passenger window. She recognized both the driver and Baldwin. She had previously seen Baldwin in the neighborhood and knew him by the nickname "Drugs."
 {¶ 4} In the first assignment of error, Baldwin contends that the trial court erred when it overruled Baldwin's objection to the state's peremptory challenge of an African-American potential juror. If it is true that the prosecutor peremptorily challenged an African-American because of her race, then that would have violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[1] But, the trial court concluded that the prosecutor had not engaged in racial discrimination. A court decides such a claim in three steps.[2] First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination.[3] Second, if the trial court finds that the opponent has fulfilled this requirement, then the proponent of the challenge must come forward with a racially neutral explanation for it.[4] Third, if the proponent puts forward a racially neutral explanation, the trial court must decide, on the basis of all the circumstances, whether the opponent has proved purposeful racial discrimination.[5] An "explanation need not rise to the level justifying exercise of a challenge for cause,"[6] and, unless a discriminatory intent is inherent in the explanation, the reason offered should be deemed race neutral.[7] The burden of persuasion is on the opponent of the challenge.[8] Finally, because the trial court's finding of no discriminatory intent turns largely on the evaluation of credibility, it is entitled to deference on appeal and will not be reversed unless clearly erroneous.[9] Removing a juror based on the criminal history of a relative has been deemed a valid, race-neutral reason for exercising a peremptory challenge.[10]
 {¶ 5} While the potential juror in this case did indicate, among other things, that the past criminal prosecution of her spouse's relative would not affect her judgment, she also stated that she did not believe the relative, a former, high-ranking Cincinnati police officer who was African-American had been treated fairly. Along these same lines, the Ohio Supreme Court has deemed race-neutral the state's explanation that a potential juror, who had not followed the trial, had expressed a particular opinion about the O.J. Simpson trial verdict.[11] In this case, the potential juror was challenged on the basis of an opinion held about past criminal proceedings and not on the basis of a racial characteristic.[12] After reviewing the record, we cannot say that the trial court's acceptance of the explanation given by the state was clearly erroneous. Accordingly, we overrule Baldwin's first assignment of error.
 {¶ 6} In the second assignment of error, Baldwin limits his argument to the claim that the trial court based its sentence on a sentencing factor that lacked an evidentiary basis: that Baldwin's crimes were motivated by race, ethnic, gender, sex or religious prejudice.
 {¶ 7} When imposing a felony sentence, the trial court must consider the overriding purposes of felony sentencing, which are to protect the public from future crime and to punish the offender.[13] The law requires that a sentence imposed for a felony shall be reasonably calculated to achieve the purposes of felony sentencing, "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."[14] The trial court must consider the factors found in R.C. 2929.12(B) and (C) to determine how to accomplish the purposes embraced by R.C. 2929.11.[15]
 {¶ 8} Additionally, the trial court may not impose consecutive sentences for multiple offenses unless it finds three statutory factors: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; (3) that one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c) exists.[16]
A trial court must also comply with R.C. 2929.19, which clearly prescribes what a trial court must do and say at a felony sentencing hearing when imposing consecutive sentences.[17]
 {¶ 9} It appears that the trial court arrived at its conclusion that Baldwin's crimes were motivated by prejudice because they had occurred during a time of rioting in Cincinnati. In the absence of further elaboration by the trial court, we cannot say this was sufficient to support the court's finding of a motivation rooted in prejudice. But, Baldwin had multiple adult felony convictions, as well as a juvenile record, for a variety of offenses that the trial court repeatedly made reference to during the sentencing hearing and properly noted on the felony sentencing worksheet. Also, Baldwin had previously been incarcerated. Our review of the transcript of the sentencing hearing shows that the trial court made all the required findings on the record at the hearing to support the sentences it imposed.[18] Even if there was an erroneous finding of prejudice by the trial court, there was clearly an independent evidentiary basis for the sentences it imposed. Accordingly, we overrule the second assignment of error.
 {¶ 10} In the third assignment of error, Baldwin contends that the trial court erred when it entered a judgment of conviction following a trial at which the prosecutor committed misconduct by making improper arguments. When defense counsel fails to object to improper argument, the issue of misconduct is waived except for plain error, in which case the complaining party must demonstrate that but for the error, the outcome of the trial clearly would have been otherwise.[19] Except in one instance, no objections were made in this case to the arguments by the prosecutor now challenged by Baldwin, and this included the prosecutor's confusion during closing argument about a defense witness's prior conviction. The jury had already heard the defense witness himself testify correctly about the prior conviction. This was a case that turned upon the credibility of the witnesses, and the credibility of the witnesses was primarily for the trier of fact to determine.[20] Viewing the trial in its entirety, we cannot say that the prosecutor's challenged statements were outcome-determinative.[21] The single statement objected to by defense counsel concerned the prosecutor's assessment of the only identification eyewitness: "She told the untarnished truth." Clearly, it is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.[22] But the trial court in this instance immediately gave the jury a cautionary instruction based upon Baldwin's prompt objection. The jury is presumed to have followed the trial court's instructions.[23] Accordingly, we hold that Baldwin's third assignment of error is not well taken.
 {¶ 11} Therefore, we affirm the judgment of the trial court.
 {¶ 12} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Gorman and Winkler, JJ.
[1] See Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712.
[2] See State v. Herring, 94 Ohio St.3d 246, 255, 2002-Ohio-796,762 N.E.2d 940.
[3] See id.
[4] See id. at 255-256.
[5] See id. at 256; Batson at 98, 106 S.Ct. 1712
[6] See Herring at 256, 2002-Ohio-796, 762 N.E.2d 940.
[7] See Purkett v. Elem (1995), 514 U.S. 765, 768, 115 S.Ct. 1769.
[8] See id.
[9] See Herring at 257, 2002-Ohio-796, 762 N.E.2d 940; State v.Hernandez (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 see, also,State v. O'Neal, 87 Ohio St.3d 402, 410, 2000-Ohio-449, 721 N.E.2d 73.
[10] See State v. Santiago, 10th Dist. No. 02AP-1094, 2003-Ohio-2877;State v. Lipscomb, 1st Dist. No. C-000737, 2001-Ohio-3909, appeal denied, 95 Ohio St.3d 1421, 2002-Ohio-1737, 766 N.E.2d 161.
[11] See State v. O'Neal, 87 Ohio St.3d 402, 409, 2000-Ohio-449,721 N.E.2d 73.
[12] See id.; State v. Murphy, 91 Ohio St.3d 516, 529, 2001-Ohio-112,747 N.E.2d 765.
[13] See R.C. 2929.11(A).
[14] See R.C. 2929.11(B).
[15] See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, ___ N.E.2d ___, at ¶ 13.
[16] See id.; R.C. 2929.14(E)(4).
[17] See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, ___ N.E.2d ___, at ¶ 20.
[18] See State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, ___ N.E.2d ___, at ¶ 13; State v. Edmonson, 86 Ohio St.3d 324, 328,1999-Ohio-110, 715 N.E.2d 131.
[19] See State v. Myers, 97 Ohio St.3d 335, 359, 2002-Ohio-6658,780 N.E.2d 186, at ¶ 140; State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus.
[20] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[21] See State v. Carsten, 10th Dist. No. 02AP-166, 2002-Ohio-6748.
[22] See State v. Williams, 79 Ohio St.3d 1, 12, 1997-Ohio-407,679 N.E.2d 646; State v. Smith (1984), 14 Ohio St.3d 13,470 N.E.2d 883.
[23] See State v. Jones, 90 Ohio St.3d 403, 414, 2000-Ohio-187,739 N.E.2d 300.