OPINION
{¶ 1} Defendant-appellant Charles Copeland appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of burglary. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 21, 2003, the Stark County Grand Jury indicted appellant on one count of aggravated burglary in violation of R.C.2911.11(A)(1), a felony of the first degree. At his arraignment on December 12, 2003, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, a jury trial commenced on February 23, 2004. The following evidence was adduced at trial.
 {¶ 4} Appellant and Mari Jackson, who both worked at Sterlite, Inc., had a one night stand in January of 2003. At the time, unbeknownst to Jackson, appellant had a girlfriend, Mary Hawkins.
 {¶ 5} On February 14, 2003, Jackson received a telephone call after 3:00 a.m. After the caller hung up, Jackson was able to determine that the call came from a pay phone in a Wal-Mart in Massillon. Shortly thereafter, appellant called Jackson and wanted to know what she had said to his girlfriend. From appellant's conversation with her, Jackson was able to determine that the hang up phone call was from Hawkins. In May of 2003, Jackson received another phone call that initiated from appellant's mother's house. The following is an excerpt from Jackson's trial testimony:
 {¶ 6} "I got home from work, my phone rang. It was a Massillon phone number, and the name on the caller ID with the phone number I didn't know. I didn't know who it was.
 {¶ 7} "So I said hello. It was a little girl. Hello, there was a little girl on the phone, and she was like this is Alicia, Ashley or whoever.
 {¶ 8} "And I am like Who do you want to talk to, and I am like if you don't — I said, If you can't think of the right name to say before you call somebody's house, I said don't call, and hung up.
 {¶ 9} "They called right back again. So then I looked in, so I looked up the last name with a phone number in the phone book, and the address went to a 1215 South Erie Street, and I didn't know whose address it was or who that was. I didn't know.
 {¶ 10} "I didn't find out until later it was the address of Mr. Copeland's mother. Transcript at 96-97.
 {¶ 11} In both February and May of 2003, Jackson told appellant "to tell her [Hawkins] to stop coming to my house or if I seen her on the street, I was going to beat her blind; no, no phone calls, no nothing." Transcript at 98.
 {¶ 12} At trial, Jackson also testified that she had an altercation in the parking lot at Sterlite with Hawkins. Jackson testified that she went to Sterlite and told appellant to tell Hawkins to stop calling her house. According to Jackson, "when I pulled up, she [Hawkins] jumps out the car with some kind of bat or something she had in her hand, and she said B, come back here, . . ." Transcript at 116. Jackson testified that she did not talk directly to Hawkins at such time.
 {¶ 13} On August 9, 2003, Jackson got off work and arrived at her apartment at approximately 2:50 a.m. After taking a shower, Jackson went to bed. Shortly thereafter, Jackson heard a knock on her door. When she opened the door a crack, Jackson saw appellant "standing at an angle." Transcript at 101. After appellant asked her what was up, Jackson indicated nothing and proceeded to close the door to go back to bed. According to Jackson, "[t]hat's when Ms. Hawkins came around from the blind side of my door, tried to force the door open." Transcript at 101. At the time, Hawkins was screaming "You're F'ing with a Cleveland B now. You're nothing but a B. You're nothing but a tramp. You're nothing but a whore, . . ." Transcript at 102.
 {¶ 14} Jackson tried to shut the door, but was unable to do so after appellant helped Hawkins force the door open. The apartment door then flew open and crashed into Jackson's entertainment center, causing it to hit the wall. When Hawkins entered the apartment, she grabbed Jackson's hair and attempted to kick Jackson in her "private area," but missed. Transcript at 102. Jackson then hit Hawkins on the side of her face and grabbed her hair. Hawkins then bit down on Jackson's finger. Jackson testified that during the incident, appellant was standing in the doorway with a smirk on his face saying, "Yeah, you don't know who you were F'ing with." Transcript at 103. Appellant, according to Jackson, did not try to intervene at that point and did not try to intervene until Jackson was pulling on Hawkins' hair. At that point, appellant grabbed Jackson's wrist and told her to get off of Hawkins.
 {¶ 15} Hawkins finally let go of Jackson's finger and both appellant and Hawkins ran to appellant's car and took off. Jackson then called 9-1-1. When a Deputy Sheriff came to her apartment, Jackson provided a written statement and a license plate number. Jackson was later treated at a Statcare facility after her finger became infected.
 {¶ 16} At the conclusion of the evidence and the end of deliberations, the jury, on February 24, 2004, found appellant not guilty of aggravated burglary, but guilty of the lesser included offense of burglary in violation of R.C. 2911.12 (A)(4), a felony of the fourth degree. As memorialized in a Judgment Entry filed on April 16, 2004, appellant was sentenced to six months in prison.
 {¶ 17} Appellant now raises the following assignment of error on appeal:
 {¶ 18} "Appellant's conviction is against the sufficiency and weight of the evidence."
 I {¶ 19} Appellant, in his sole assignment of error, argues that his conviction for burglary is against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 20} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 21} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 22} As is stated above, appellant was convicted of burglary in violation of R.C. 2911.12 (A)(4). Such section states as follows: "A) No person, by force, stealth, or deception, shall do any of the following: . . . (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.0(A)(1). In turn, trespass is defined as knowingly entering the premises of another without privilege to do so. R.C.2911.21(A)(1). See also State v. O'Neal, 87 Ohio St.3d 402, 408,2000-Ohio-449, 721 N.E.2d 73.
 {¶ 23} While appellant argues that there is insufficient evidence of force or trespass, we disagree. As is set forth above, at the trial in this matter, Mari Jackson testified that appellant knocked on her door and, after Jackson opened the door, Hawkins came around the side of the door and attempted to force the same open. Jackson testified that although she attempted to close the door to her apartment, she was unable to do so after appellant helped Hawkins force the door open to gain entry. While appellant argues that, due to her soured relationship with appellant and her contentious history with Mary Hawkins, Jackson was not a credible witness, we note that the jury, as trier of fact, was in the best position to assess Jackson's credibility. Clearly, the jury found her to be a credible witness.
 {¶ 24} In short, upon our review of the record, we find that any rational trier of fact could have found that appellant, by force, stealth, or deception, trespassed in appellant's apartment when appellant was present and that appellant did not have privilege to do so. Furthermore, upon our review of the evidence, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.
 {¶ 25} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 26} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.